The State of Ohio, Appellee, *v.* Pina et al., Appellants.
The State of Ohio, Appellee, *v.* Dombrowski, Appellant.

(Nos. 983 and 984—Decided December 5, 1975.)

*Mr. James A. Berry,* prosecuting attorney, for appellee.

*Messrs. Thompson, Swope, Burns & Biswas* and *Messrs. Bailey & Doughty,* for appellants.

McBRIDE, J. Three defendants were indicted on August 29, 1974, for multiple counts of aggravated burglary. On November 11, 1974, the charges were reduced to one count of breaking and entering, pleas of guilty were accepted and the defendants sentenced to terms of two to five years. On May 6, 1975, motions to withdraw the pleas of guilty were heard by the trial court and denied. It is from this denial that this appeal arises.

We agree that a motion to withdraw a plea of guilty may be made only before sentence is imposed, or after the imposition of a sentence is suspended or after sentence to correct a manifest injustice. Criminal Rule 32.1. We conclude that the sentences should be suspended and that the motions to set aside the judgment should be sustained to correct a manifest injustice.

By way of background, the defendants are immigrant gypsies, although the two women spent their first two years in the United States. The rest of their lives they spent in Poland or thereabouts, as well as can be ascertained, coming to the United States within the last two years.

At no time since their arrest did any one of the defendants speak for the record in English or in any other language. The local police officers, counsel and the court at no time communicated directly with them. Their responses to interpreters were not reported. The interpreters responded with collective conclusions such as, *"they* understand" or " *they* agree." Never once were their responses interpreted or individualized as to each defendant.

The communication problem arose from the fact that these defendants use a tribal dialect of a Lovari Gypsy of Romany, influenced by considerable Polish and some German, with an Austrian accent. This communication problem was compounded by cultural and concept differences which operated as a handicap to an explanation of the American

judicial concepts to people familiar only with a different system.

Certainly, there is a suspicion of a lack of cooperation in understanding. Those in the defendants' situation and vagrant background possess a native shrewdness, acquired in their wanderings, living by their wits and their own code that does not resemble that of the culture in which they reside and which they resist. That they resided in the United States two years, supporting a family, casts further doubt upon their total ignorance of English; however, this does not justify going beyond the record made at the time they supposedly entered a plea and at the time of the hearing on the motion to vacate the sentences.

The first assignment of error is the failure of the court to give all the mandatory instructions required by Criminal Rule 11(C)(2)(b) and (c) and the failure to comply with Criminal Rule 22. The second assignment of error is that the record does not demonstrate that the defendants were aware of the nature of the charge and the penalty or that they intelligently waived their rights. These will be discussed together.

It appears from the record that the two ladies had no formal education and could not read or write any language. The gentleman finished four years of grade school in Poland and could read and write Polish. Their attorney could not converse with them and was as dependent upon interpreters as the court.

The following is sufficient to demonstrate how the hearing was conducted:

"Q. Are they also aware they would not be compelled to testify against themselves if they do not wish to? (Whereupon Mr. Kurpiel and Mr. Koloziej translated to the defendants.)

"Mr. Kurpiel: They understand.

"Mr. Koloziej: They do understand."

The record continues with no statement of any kind by the defendants personally and no direct translation of what the defendants said in any language. The response of one or the other of the interpreters was always the same: "They concurred." "Yes, they expressed that pre-

viously." "They waive their rights." "They do agree." The only record of the defendants' statements, understanding and plea is the general conclusion by an interpreter that they collectively understood or agreed. There is no record of what the interpreter said to the defendants and no record of the response of any one of the defendants to the interpreter's translation.

First, it appears that in advising the defendants the Court did not include all the rights set forth in Criminal Rule 11(C)(2)(c), leaving out the right of confrontation and compulsory process. The Court did not *personally address* any defendant on any subject and omitted one or more items in Criminal Rule 11(C)(2)(a) and (b). In addition, as indicated earlier, the record reports the conclusions of the interpreters and never once reports, by a tape recording or otherwise, any direct communication by the Court to the defendants or by the defendants to the Court. The record in this respect is silent, even as to the entry of the plea itself. Criminal Rule 22.

The prosecution argues that Criminal Rule 11 is a "voluntary and not constitutionally mandated supervisory rule of procedure designed to more accurately determine the voluntariness of a guilty plea." Further, he argues that if the omission of an item in Criminal Rule 11 invalidates a plea, this "would reduce Criminal Rule 11 to a ritualistic scholastic exercise similar to the *Miranda* warnings." It is a mistake to assume that the *Miranda* warnings or Criminal Rule 11 is a ritualistic scholastic exercise.

Criminal Rule 11 is mandatory. A guilty plea cannot be said to be voluntary without strict compliance. *State* v. *Griffey* (1973), 35 Ohio State 2d 101; *State* v. *Scott* (1974), 40 Ohio App. 2d 139; *State* v. *Stone* (1975), 43 Ohio State 2d 163.

The record is further confused by a reference to restitution, as follows:

"Mr. Hunter: A part of the state's negotiated plea was the prerequisite of the restitution being made.

"Mr. Koloziej: They fully understand and agree to it."

Later, it appears that restitution was made. This

confusion is suggested by a comment by the interpreter at the sentencing that defendants have children and they would like to pay the *fine* and return to the children.

Interpreters are used infrequently. In ordinary situations, the vehicle of communciation is not a problem whether the method is by way of sign language, as with a deaf mute, or the translation of a foreign language. The problem in the instant case is magnified by a mixture of an isolated dialect with an ancient tongue that has borrowed words of Polish and German origin. The problem, however, is no more insurmountable than the ability of these defendants to exist in this country. What we are confronted with is the procedure to be followed in court when an interpreter is used.

In *State* v. *Rodriguez* (1959), 110 Ohio App. 307, the Court of Appeals for Fulton County said that in the examination of witnesses who cannot understand or speak the English language, the interpreter should not be permitted to give his conclusions with respect to answers of the witness but should give a literal interpretation of the language employed by the witness.

If a witness does not understand English, an interpreter will be sworn to interpret the oath to him and his testimony to the court. 56 Ohio Jurisprudence 2d 516, Witnesses, Section 86; 172 A. L. R. 923. An interpreter is considered and must be sworn as any other witness. While the manner of eliciting the testimony of the witness through an interpreter is within the discretion of the trial court, the proper method is not to address the question to the interpreter but to the witness. The question is then repeated by the interpreter without any remarks of his own, and the answers must be repeated literally by the interpreter in the first person. The interpreter should give the answer, and the whole answer of the witness, adding nothing to it. 58 American Jurisprudence 309, Witnesses, Section 556. The interpreter as well as the witness is subject to cross-examination on the terms and expressions used. 58 American Jurisprudence 365, Witnesses, Section 662. To the same effect is 98 Corpus Juris Secundum 27, Witnesses, Section 326.

While considerable latitude exists as to the method of translation and the refusal of the court to obtain a full translation of the answers of the witness may not necessarily constitute a fatal error, when a plea of guilty is accepted in a criminal case it is our opinion that it is prejudicial error not to require a translation and record of what the defendant says or to accept the conclusion of the interpreter that the message of the court has been conveyed, the defendent understands and pleads guilty. Under the latter perfunctory method, there is no way by which the court can personally address the defendant and no possibility that the court can find or be factually assured that the defendant understands and knowingly waives and pleads guilty.

This is particularly true where, as here, there are three defendants who do not speak English and each question is presented off the record to the three defendants who enter into a huddle with the interpreter, who thereupon reports back to the court the conclusion that "they understand" or "they agree." Under these conditions there is a total lack of evidence in the record upon which the court may reach a factual conclusion.

Further, in a criminal case the defendant is entitled to hear the proceedings in a language he can understand. 15 Ohio Jurisprudence 2d 641, Criminal Law, Section 267; 15A Ohio Jurisprudence 2d 331, Criminal Practice and Procedure, Section 279. How this is accomplished is within the discretion of the trial judge; however, it must be accomplished.

Under the state of the record in this case, assignments one and two must be sustained because of the violations of Criminal Rules 11 and 22.

The third assignment of error is the exclusion of the testimony of Dr. Lewis Lindner, a psychiatrist employed at Ohio State University, at the hearing on the motion to withdraw the guilty plea. The witness had interviewed the three defendants through an interpreter after they had been sentenced. He indicated an ability to determine the competence of a person to understand and to comprehend

what was said and what they were doing. He testified that while there are no words in the Lovari dialect of the Romany language to express all of the concepts in the Anglo-Saxon judicial system, communication was possible. He said it would be "an extremely lengthy process." The witness indicated a familiarity with Gypsy culture and language from English and German literature. The opinion of Dr. Lindner that the defendants did not understand the instructions and did not understand what transpired at the time of the plea was rejected and entered into the record as a proffer of his testimony.

When the competency of a witness because of mental or language limitations is an issue, it is appropriate and often necessary to rely upon the testimony of professional, medical or lingual experts, as is the practice in all proceedings involving matters not within the common knowledge of laymen. *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio State 2d 77; *Ragone* v. *Vitali & Beltrami, Jr., Inc.,* (1975), 42 Ohio St. 2d 161. Where an unusual language is involved, testimony of an expert is admissible to determine the accuracy of the language used and the effectiveness of the translation. There is no other method by which the court can determine whether what it or the defendants said was true or accurate in the foreign language into which it was translated.

Since there is no record of any kind in this case of the translation, it is impossible for anyone to determine what anyone said to the defendants or what the defendants said to the interpreter. As to these defendants, the record is one of total silence. The testimony of the expert in this case merely explored and confirmed the factual vacuum. This assignment of error is sustained.

The fourth assignment of error is based upon the denial of defendants' motion to be present at the hearing on the motion to withdraw their plea. In view of the decisions we have already reached, this assignment is redundant; however, where a factual issue arises after sentence and an evidential hearing is ordered and conducted essential fairness and justice requires that the parties involved

be present. This is particularly true where the factual issue involves the ability and competency of such parties to understand what took place. This assignment of error is also sustained.

For their fifth and final assignment of error, the defendants assert a denial of several constitutional rights. For the purposes of this case, the Criminal Rules adopted by the Ohio Supreme Court have the full force and effect of the statutes of Ohio, at least to the extent that they control the procedure in criminal cases. Since these rules were not complied with, it is unnecessary for us to resort to the constitution; however, for the purpose of the appellate rules, which require a decision on each specification, it is our opinion that the absence of a complete record and the denial of the request to be present at the hearing on the motion to withdraw their guilty pleas amounts in this case to a denial of equal treatment and of due process. The failure to ensure that non-English speaking defendants are given the same opportunity as others to be present, to speak in their defense and to understand what is taking place, in whatever language they possess, reaches constitutional proportions. This assignment of error is sustained.

The motions to withdraw the guilty pleas of the defendants are sustained, the sentences are vacated and the cases are remanded for further proceedings.

*Motions sustained.*

KERNS, P. J., and SHERER, J., concur.