DECISION AND JUDGMENT ENTRY
Frederick Wayne Webb ("Frederick") appeals the judgment entry of the Meigs County Court of Common Pleas, Domestic Relations Division, which granted Michiko Webb ("Michiko") a divorce from Frederick. He asserts that the trial court erred by allowing the parties' son to interpret parts of Michiko's testimony. We agree, but find that any error was harmless. Next, Frederick argues that the trial court erred by finding that Michiko's payment of approximately thirty six thousand dollars for their marital residence was traceable to her separate property. We disagree because competent, credible evidence supports the trial court's finding. Frederick also asserts that the trial court erred in ordering only him to pay spousal support because he is older than Michiko and because the court failed to consider the totality of the circumstances. We disagree because the trial court did not abuse its discretion in setting spousal support. Frederick argues that the trial court erred by including the disability benefit in the division of his military pension benefits. We disagree because the trial court did not abuse its discretion in dividing the portion of the military pension that was marital property, which included the disability benefit. Frederick also argues that the trial court incorrectly included his disability benefit twice in the calculations regarding division of his military pension. We agree because all the evidence adduced at trial indicates that the thirteen hundred eighty-nine figure already included the one hundred eighty-two dollar disability benefit. Finally, Frederick argues that the trial court abused its discretion in allocating four debts to him. We disagree because the trial court did not act arbitrarily, unreasonably, or unconscionably in ordering Frederick to pay the debts. Accordingly, we affirm in part and reverse in part the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
 I.
Michiko and Frederick married in 1963 in Japan, where Michiko was born and raised. At the time of their marriage, Frederick was in the United State's Air Force and stationed in Japan. Michiko is a high school graduate and attended college for a few months, but has no further education. After her marriage, Michiko renounced her Japanese citizenship and became a United States citizen.
The parties moved frequently during their marriage. Michiko worked outside of the home only during the time when the parties lived in Virginia. There, Michiko's fluency in Japanese and limited understanding of English allowed her to work at a duty-free shop in an airport. Frederick worked for the Air Force until 1976, when he retired. He then worked for Freddie Mac until his retirement from that position. He currently receives retirement benefits from both jobs. At the time of the proceedings below, Frederick was consulting in the telecommunications field.
Frederick and Michiko moved from Virginia to Meigs County in 1993. They began building a home, financed in part with Michiko's inheritance. Michiko filed for a divorce from Frederick. At the hearing on the divorce, Michiko, Frederick and their emancipated son, Eugene, testified. Prior to Michiko's testimony, her counsel informed the court that she attempted to locate an interpreter for Michiko, who has difficulty understanding and speaking English, but was unable to find one. Michiko's counsel suggested that the parties' son, Eugene, be allowed to interpret if Michiko could not understand any part of the proceedings. Over Frederick's objection, the trial court allowed Eugene, after he had been sworn and had testified, to translate a few times during Michiko's testimony on direct examination.
After Michiko's direct examination, the hearing was reconvened at a later date. By that time, Frederick located an interpreter who assisted Michiko during cross-examination. After the hearing, Michiko submitted supplemental exhibits that traced the inheritances she received during the marriage.
The trial court found that the parties were incompatible and ordered that the marital home and most of the parties' personal property be sold. The court ordered the proceeds to be used first to pay any real estate taxes and the mortgage, and then to reimburse Michiko for her separate property that was invested in the marital home. The court ordered that any remaining balance be divided equally between the parties. The trial court divided one hundred per cent of Frederick's FreddieMac pension and fifty-nine per cent of his military pension as marital assets.
In the "findings of fact by the court" section, the trial court found that Michiko should receive "approximately $985.45 as her share of the retirements each month and, therefore, [Frederick] should pay an amount so that the sum of her monthly pension share and the spousal support is $2300.00." The trial court went on to find that Michiko's share of the pensions is part of the property settlement, and that Frederick "should, therefore, pay an additional minimum of $1300.00 per month while employed as he was at the time of the final hearing on this matter. The Court further [found] that [Frederick] should always pay a minimum of $100.00 per month while unemployed. Both the employed and unemployed amounts shall be paid, as and for long term spousal support for a period of fifteen (15) years."
However, in the "Conclusions of Law" section, the trial court ordered Frederick to pay nine hundred dollars a month in spousal support for seven years or until either party dies or Michiko remarries. The trial court's entry provided that "[i]n the event the Defendant remains unemployed for a period of over sixty (60) days then, upon petition to the Court, the spousal support amount may be reduced to $100.00 per month. Again, the spousal support amount shall be modifiable as circumstances change."
Frederick appeals and asserts the following assignments of error:
 I. The direct testimony of Michiko Webb, who allegedly could not speak fluent English, was taken without benefit of an interpreter, who additionally was not sworn as an interpreter, and should be struck as prejudicial and/or remanded for a new trial.
 II. The trial court's award of $36,356.59 to reimburse Plaintiff-Appellee, Michiko Webb, for her separate monies allegedly put into the marital residence is an abuse of discretion and should be reversed and/or remanded for new trial as same was not proven nor properly traced.
 III. The placing of a spousal support burden on an older spouse without placing similar burdens on a younger spouse is contrary to law and an abuse of discretion, and the matter should be remanded.
 IV. The trial court failed to properly address the totality of the circumstances in determining reasonable spousal support.
 V. The trial court incorrectly figured the 29.5% of monies to which the court found Plaintiff, Michiko Webb, allegedly entitled.
 VI. The trial court failed to address the substantial debts of Defendant, Frederick Wayne Webb, pursuant to Defendant's Exhibit "6."
 II.
In his first assignment of error, appellant argues that the trial court erred by allowing Eugene to interpret during Michiko's direct examination.
"An interpreter is subject to the provisions of [the Evidence Rules] relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation." Evid.R. 604. See, also, State v. Torres
(Dec. 2, 1993), Cuyahoga 64335, unreported (unsworn interpreter, who is also indicted co-defendant, had conflict of interest that could have affected veracity or fidelity of translation).
The manner of eliciting testimony through an interpreter is within the sound discretion of the trial court. State v. Pina
(1975), 49 Ohio App.2d 394, 398. It is undisputed that Eugene was not sworn in as an interpreter or qualified as an expert witness, as Evid.R. 604 requires. Therefore, the trial court acted unreasonably in allowing him to serve as an interpreter. Accordingly, we sustain appellant's first assignment of error.
We now determine whether the court's error was prejudicial to Frederick. We "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Civ.R. 61; R.C. 2309.59. See, also, Inscoe v.Inscoe (1997), 121 Ohio App.3d 396, 420. Eugene translated only a few sentences during Michiko's direct testimony. Frederick had some knowledge of the Japanese language and was able to thoroughly cross-examine Michiko with the aid of an interpreter he selected. Because allowing Euguene to translate a few sentences during the hearing did not affect Frederick's substantial rights, we must disregard any error that might have occurred regarding his translations. Thus, we find that the error was harmless.
 III.
In his second assignment of error, Frederick argues that the trial court's determination that Michiko contributed approximately thirty-six thousand dollars of her separate property to construction of the marital home was error. He asserts that Michiko did not properly trace the funds to her separate property.
When a trial court grants a divorce, it must determine whether the parties' property is marital or separate. R.C.3105.171(B). The trial court's characterization of property as marital or separate involves a factual inquiry. Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159; Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02, unreported. We will not disturb such a finding unless it is against the manifest weight of the evidence. Barkley at 159; Wylie v. Wylie (May 30, 1996), Lawrence App. No. 95CA18, unreported; Miller v. Miller (Dec. 1, 1993), Washington App. No. 93CA07, unreported. A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence. Sec. Pacific Natl. Bank v.Roulette (1986), 24 Ohio St.3d 17, 20; Barkley at 159. We are guided by the presumption that the trial court's findings are correct since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the testimony. In re Jane Doe I (1991), 57 Ohio St.3d 135; Barkley
at 159.
Marital property includes all real property currently owned by either or both of the spouses that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). Therefore, property acquired during the marriage is presumed to be marital property, unless it is shown to be separate property. Barkley at 160.
Separate property includes an inheritance by one spouse during the course of the marriage and a gift given to only one spouse. R.C. 3105.171(A)(6)(a)(i) and (vii). This type of property is presumed to remain separate property as long as it is traceable, regardless of whether it has been commingled with other property. Barkley at 160.
A spouse may change separate property into marital property by the spouse's own actions. Barkley at 160. A court should consider six factors in determining whether separate property has been transmuted into marital property. These factors are: "(1) the expressed intent of the parties insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties." Kuehn v. Kuehn (1988), 55 Ohio App.3d 245, 246, cited with approval in Barkley.
Michiko testified that she used approximately thirty-six thousand dollars of her inheritance from relatives in Japan towards the construction of the parties' marital home. Both parties testified that Michiko always kept her inheritance separate from the marital accounts and retained sole control over them. Exhibits admitted at trial supported her testimony that she had received a total of approximately one hundred thousand dollars in inheritance from Japan during her marriage to Frederick and that she did not take actions that changed the inheritance into marital property. Michiko's testimony and the exhibits constitute competent, credible evidence that she used approximately thirty-six thousand dollars in separate property towards construction of the marital home.
Because competent, credible evidence supports the trial court's finding that Michiko used approximately thirty-six thousand dollars in separate property towards the marital home, the trial court did not err in so finding. We overrule Frederick's second assignment of error.
 IV.
In his third and fourth assignments of error, Frederick argues that the trial court erred in granting spousal support. He asserts that the trial court erred by (1) ignoring Michiko's ability to work, (2) ordering him to pay spousal support of one hundred dollars per month when he is unemployed, (3) not ordering Michiko to pay him spousal support if she begins working, and (4) not considering possible income on Michiko's separate property.
 A.
We begin by examining the trial court's judgment entry in order to clarify the conflicting amounts and durations of spousal support ordered by the trial court in its entry.[1]
The proposed findings of fact and conclusions of law filed by Michiko provided for thirteen hundred dollars per month in spousal support for fifteen years. However, the trial court's signed version of the "proposed findings of fact and conclusions of law," which we construe as the trial court's entry, provided for thirteen hundred dollars per month for fifteen years in the findings of fact section, and nine hundred dollars per month for seven years in the conclusions of law section. We find that the conclusions of law section, which the trial court actively created by altering Michiko's proposal, communicates the trial court's intended conclusion. We, therefore, find that the trial court ordered Frederick to pay nine hundred dollars per month in spousal support for the sooner of: (1) seven years, (2) the death of either party, or (3) Michiko's remarriage. The entry also provides that if Frederick remains unemployed over sixty days, he may petition the court for a reduction in spousal support to one hundred dollars.
 B.
It is well settled that trial courts enjoy broad discretion in awarding spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64,67; Cherry v. Cherry (1981) 66 Ohio St.2d 348. A court's decision awarding or failing to award spousal support will not be reversed on appeal absent an abuse of that discretion.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24; Holcombv. Holcomb (1989), 44 Ohio St.3d 128, 131. An abuse of discretion is more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable.Masters v. Masters (1994), 69 Ohio St.3d 83, 85; Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Once a party requests spousal support, the court may award an "appropriate and reasonable" amount. R.C. 3105.18. In determining what is "appropriate and reasonable" the court's discretion must be guided by the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)(1); Cherry at 355.
Frederick's concerns that he will not receive spousal support if Michiko works and that he is required to pay one hundred dollars a month in spousal support if he becomes unemployed are not ripe for review. Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting an appellant.Ohio Domestic Violence Network v. Pub. Util. Comm. (1992),65 Ohio St.3d 438, 439; Ohio Savings Bank v. Ambrose
(1990), 56 Ohio St.3d 53, 55-56 at fn. 3; Ohio ContractCarriers Assn., Inc. v. Pub. Util. Comm. (1942), 140 Ohio St. 160, syllabus. The trial court's entry does not order an automatic decrease in spousal support if Frederick becomes unemployed. To the contrary, the order states that Frederick must petition the court for such a modification. Therefore, the trial court retained jurisdiction to modify the spousal support when the parties' circumstances change. If Michiko becomes employed or if Frederick becomes unemployed, he is free to seek a modification. Accordingly, we decline to review the merits of these arguments because they are not ripe for review.
Frederick next asserts that the trial court erred by ignoring Michiko's ability to work. To the contrary, the trial court found that Michiko has "little or no marketable skills due to her lack of work history, * * * and due to the significant language barrier [Michiko] suffers in this English speaking country." The trial court considered Michiko's ability to work pursuant to R.C. 3105.18(C)(1)(b). We find that the trial court did not ignore Michiko's ability to work.
In his final argument concerning spousal support, Frederick argues that the trial court erred by not considering the possible income on Michiko's separate property. In its judgment entry, the trial court stated: "[Michiko] is entitled to long term spousal support due to the findings of fact set forth above and as set forth in Plaintiff's Exhibit `EE.'" Plaintiff's Exhibit "EE," lists the "Factors for Court to Consider in Awarding Spousal Support." Included in this list is the "Income of all parties, from all sources." Thus, we find that the trial court considered the income from Michiko's separate property as required by R.C. 3105.18(C)(1)(a)
Having rejected or declined to review all of Frederick's arguments in support of his third and fourth assignments of error, we overrule them.
 V.
In his fifth assignment of error, Frederick argues that the trial court incorrectly figured the portion of his military pension to which Michiko was entitled.
He first alleges that the trial court should not have included the disability benefit he receives. However, he provides no legal authority or reasoning other than his conclusion.
As a reviewing court, we must apply an abuse of discretion standard of review to trial court decisions dividing retirement assets. Levine v. Levine (Sept. 3, 1999), Washington App. No. 98CA34, unreported. In Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, paragraph one of the syllabus, the court held as follows that when a trial court employs its discretion to divide retirement assets, the trial court must consider many factors, including the circumstances of the parties and the nature of their retirement assets:
 "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result."
Trial courts dividing retirement assets must attempt to meet the dual goals of preserving the parties' retirement assets and disentangling the parties' economic partnership. Id., paragraph two of the syllabus. When dividing matured retirement benefits, the trial court may either: (1) consider the benefits as income and divide that income; or (2) determine a present cash value of the retirement asset and divide that value. Id. at 182,
The trial court found that fifty-nine percent of the military pension was marital property and divided it equally between the parties. The trial court decided to effect this award by awarding Michiko twenty-nine and one half per cent of Frederick's total monthly benefit, including the disability benefit. This was within the trial court's discretion. The disability benefit, as part of the pension, is marital property. We find that the trial court did not act unreasonably, unconscionably, or arbitrarily in awarding Michiko 29.5% of the entire monthly benefit, including disability benefit.
Frederick next argues that the trial court incorrectly calculated the portion of his military pension to which Michiko is entitled. He asserts that the trial court added the one hundred eighty-two dollar disability benefit to the thirteen hundred eighty-nine dollar military pension, when the thirteen hundred eighty-nine dollar figure already included the disability benefit. We agree. The only evidence adduced at trial indicated that Frederick's total military pension is thirteen hundred eighty-nine dollars, which includes a one hundred eighty-two dollar disability benefit. Thus, the trial court erred in using the fifteen hundred seventy one dollar figure as the total pension Frederick receives from the military.
Accordingly, we sustain in part and overrule in part Frederick's fifth assignment of error.
 VI.
In his sixth assignment of error, Frederick argues that the trial court failed to address his substantial debts, except to order him to pay them.
Absent an abuse of discretion, a reviewing court will affirm the trial court's division of marital debt. Eitel v.Eitel (Aug. 23, 1996), Pickaway App. No. 95CA11, unreported. See, also, Mulvey v. Mulvey (Dec. 4, 1996), Summit App. No. 17707, unreported. There is no requirement that the trial court explain its reasoning on the record for allocating debts to certain parties.
There was some evidence that Frederick had incurred part of the debt for business reasons. Frederick did not offer any evidence other than the statements of the debts themselves to explain why he had incurred the debts. The trial court did not act arbitrarily, unreasonably, or unconscionably in allocating these debts to Frederick. We overrule his fifth assignment of error.
 VII.
In sum, we overrule Frederick's first, second, third, fourth and sixth assignments of error, and sustain in part and overrule in part his fifth assignment of error. We affirm in part and reverse in part the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, J. and Harsha, J.: Concur in Judgment and Opinion.
For the Court
 BY: _______________________________ ROGER L. KLINE, PRESIDING JUDGE
[1] Frederick appealed a document entitled "Proposed Findings of Facts and conclusions of Law," which was signed by the trial judge. Both parties treat this document as a journal entry and the final paragraph of the document indicates that it is a judgment. Thus, we construe this document to be a judgment entry.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commencesfrom the date of filing with the clerk.