### CITY OF COLUMBUS

v.

### LOPEZ–ANTONIO.

2009-Ohio-4892.]

Franklin County Municipal Court.

No. 2009 CRB 013050.

Decided July 2, 2009.

_____

Allison Lippman, for plaintiff.

Robert James Beck Jr. and Robert J. Nekervis, for defendant.

DORRIAN, Judge.

{¶ 1} A hearing was held June 25 and 26, 2009, regarding whether the interpreter assigned to this case is qualified to serve as a court interpreter. Defendant Jose Luis Lopez–Antonio was present along with his attorneys Robert

J. Nekervis and Robert James Beck Jr. of the Franklin County Public Defenders Office. Defendant refused to stipulate to the qualifications of Spanish–English language interpreter Ricardo Bustos, who had been appointed by the court to interpret for the defendant. It had previously been determined by counsel that Spanish was defendant's native language and that he was not able to understand English. Defendant requested a hearing to determine whether Bustos is qualified to interpret. Prosecutor Allison Lippman stated to the court that she had no information regarding whether Bustos was qualified or unqualified and that she would defer to the court regarding the same. Prosecutor Lippman informed the court that she did not wish to participate in the hearing and left the courtroom. A court reporter was present, and sworn testimony was taken.

## FINDINGS OF LAW AND FACT

### I. The Limited–English–Proficient Defendant's Right to an Interpreter

{¶ 2} Although the issue presented to this court is whether the interpreter appointed in this case is qualified to serve as a court interpreter, it is important to first address the defendant's constitutional, procedural, and statutory rights to an interpreter.

#### A. *Constitutional Guarantee of Due Process*

{¶ 3} The fundamental right to due process accorded to criminal defendants by the Fifth and Fourteenth Amendments is compromised when a defendant who is limited-English proficient ("LEP") is not provided an interpreter. "The failure to ensure that non-English speaking defendants are given the same opportunity as others to be present, to speak in their defense and to understand what is taking place, in whatever language they possess, reaches constitutional proportions." Such failure amounts to denial of equal treatment and of due process. *State v. Pina* (Dec. 5, 1975), 49 Ohio App.2d 394, 361 N.E.2d 262.[1]

#### B. *Constitutional Rights at Trial*

{¶ 4} The Sixth Amendment rights to confrontation and effective assistance of counsel are violated when an LEP defendant does not understand the testimony offered against him and is unable to properly confer with his attorney. *United States ex rel. Negron v. New York* (Mar. 26, 1970), 310 F.Supp. 1304. In

---

1. The scope of the issue before this court is limited to what qualifications a court interpreter is required to have. The court will not address the proper procedure for a court interpreter, the judge, and officers of the court to follow during court proceedings; however, the court recommends *State v. Pina*, 49 Ohio App.2d 394, 3 O.O.3d 457, 361 N.E.2d 262, for a good discussion of such procedure. The court also recommends *State v. Newcomb* (Aug. 5, 2004), 10th Dist. Nos. 03AP–404 and 03AP–961, 2004-Ohio-4099, 2004 WL 1752850.

*Negron,* the federal court granted defendant's writ of habeas corpus, finding that the state court had deprived defendant of his constitutional rights under the Sixth and Fourteenth Amendments by failing to advise defendant of his right to a court-appointed interpreter and by failing to appoint an interpreter.

### C. Procedural Rights upon Waiving Right to Trial

■ {¶ 5} When a defendant waives his right to trial and proceeds to plead guilty or no contest, an Ohio court must abide by the rules outlined in Crim.R. 11. In *State v. Jones,* 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, the Supreme Court of Ohio recently addressed a court's obligations when a defendant elects to enter a guilty or no-contest plea. Defendant in the instant case is charged with two first-degree misdemeanors of domestic violence and assault. Although these are very serious offenses that carry (1) the possibility of a six-month jail sentence, (2) consequences pursuant to federal law prohibiting his purchasing, owning, or possessing firearms, and (3) possible deportation, exclusion from the United States, or denial of naturalization, domestic violence and assault are considered petty offenses. Regarding petty offenses, the Supreme Court in *Jones* said:

> Crim. R. 11 sets forth distinct procedures, depending upon the classification of the offense involved. For a petty offense * * * the court is instructed that it "may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty." Crim.R. 11(E).

*Jones* at ¶ 11.[2] The Tenth District Court of Appeals has noted that "Ohio courts have held that Crim.R. 11(E) requires that, in a misdemeanor case, the record must affirmatively demonstrate that a plea of no contest was entered voluntarily, *intelligently* and *knowingly.*" (Emphasis added.) *Columbus v. Baba* (Feb. 28,

---

2. The Crim.R. 11 requirements for serious misdemeanors and felonies are more elaborate. In *Jones,* 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, the Supreme Court explained that in the case of felonies, Crim.R. 11(C) requires a trial court to "determine that the defendant *understands* the nature of the charge, the maximum penalty involved, and the effect of the plea." (Emphasis added.) Such a determination by a trial court would not be possible if an LEP defendant does not understand the English explanations provided by the court. Furthermore, the Supreme Court has noted that part of the guidelines in Crim.R. 11(C) are a codification of constitutional mandates that require a trial court to inform the defendant and determine that he understands that by pleading guilty he is waiving (1) his privilege against compulsory self-incrimination, (2) his right to trial by jury, (3) his right to confront his accusers, and (4) his right to compulsory process of witness. *State v. Ruiz* (Mar. 16, 1994), 9th Dist. No. 16063, 1994 WL 78620, citing *State v. Nero* (1990), 56 Ohio St.3d 106, 564 N.E.2d 474; and *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, citing *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Therefore, the need for a qualified interpreter in felony cases where an LEP defendant waives his right to jury trial is more than just procedurally required by Crim.R. 11(C). It is constitutionally required.

2002), 10th Dist. No. 01AP–341, 2002 WL 307681, citing *State v. Joseph* (1988), 44 Ohio App.3d 212, 542 N.E.2d 690. If an LEP defendant does not understand the English explanation of the effect of his plea, the plea cannot be considered knowing and intelligent. One Ohio court found that when an LEP defendant did not have a qualified interpreter, there was a complete lack of compliance with the mandates of Crim.R. 5, 10, and 11. *State v. Fonseca* (Nov. 24, 1997), 124 Ohio App.3d 231, 705 N.E.2d 1278.

### D.   Title VI of the Civil Rights Act of 1964, 42 U.S.C. Section 2000d et seq.

{¶ 6} Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, and national origin in all programs and activities receiving federal financial assistance. Section 2000d–1 further authorizes and directs each federal department or agency empowered to extend financial assistance in the form of a grant, loan, or contract to ensure compliance. It further authorizes a department or agency to ensure compliance by terminating or refusing to grant or continue assistance to any recipient as to whom there has been an express finding on the record of a failure to comply with this provision.[3]

{¶ 7} Courts often receive assistance from federal agencies in the form of grants related to probation or parole programs, homeland security, and other programs. While this court is not aware which, if any, of its divisions receive federal funds, it does not wish to jeopardize any receipt thereof, and therefore, among other reasons, endeavors to ensure compliance with Title VI by ensuring that LEP defendants are not discriminated against on the basis of national origin by failure to provide an interpreter.

### E.   R.C. 2311.14 Requirement of a Qualified Interpreter

{¶ 8} The Federal Court Interpreters Act, Section 1827(d)(1), Title 28, U.S.Code, requires federal courts to appoint *certified* interpreters when reasonably available.[4]

---

3.  See *The Supreme Court of Ohio, Interpreters in the Judicial System: A Handbook for Ohio Judges,* Appendix A: Title VI/Department of Justice Materials.

4.  Section 1827(d)(1), Title 28, U.S.Code reads: "The presiding judicial officer * * * shall utilize the services of the most available *certified* interpreter, or when no certified interpreter is reasonably available * * * the services of an otherwise *qualified* interpreter * * * if the presiding judicial officer determines * * * that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings—(A) speaks only or primarily a language other than the English language; or (B) suffers from a hearing impairment * * * so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony."

{¶ 9} Ohio law, however, at present,[5] requires Ohio courts to appoint *qualified* interpreters. R.C. 2311.14(A)(1) states:

Whenever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a *qualified* interpreter to assist such person.

(Emphasis added.) The question now before this court is whether the interpreter appointed in this case is qualified.

## II. How to Determine whether an Interpreter Is *Qualified*

{¶ 10} Neither R.C. 2311.14 nor any other provision of the Ohio Revised Code provides guidance regarding how to determine whether an interpreter is qualified. Nor does Ohio case law provide much direction other than to reiterate that interpreters must be qualified. With this in mind, this court has looked to other credible sources for guidance on how to determine whether an interpreter is qualified.

### A. *Ohio Evidence Rules 604 and 702*

{¶ 11} In *State v. Newcomb*, 10th Dist. Nos. 03AP–404 and 03AP–961, 2004-Ohio-4099, 2004 WL 1752850, the Tenth District Court of Appeals noted that a "trial court should confirm the interpreter's qualifications and, if necessary, qualify the interpreter as an expert witness."

{¶ 12} The appeals court in *Newcomb* pointed to Evid.R. 604, which states that "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation." The court noted that Evid.R. 604 "mandates an interpreter must qualify as an expert, pursuant to Evid.R. 702." Evid.R. 702 states:

A witness may testify as an expert if all of the following apply:

---

5. It is important to note that a rule that would require Ohio courts to appoint a *certified* interpreter when one exists and is reasonably available is currently pending before the Ohio Supreme Court's Commission on the Rules of Superintendence. See proposed Sup.R. 88(D) on the agenda for consideration by the commission July 17, 2009. If the commission adopts the proposed rule, it will then be forwarded to the Supreme Court for final consideration and adoption. Sup.R. 88(D) was proposed by the Supreme Court of Ohio Advisory Committee on Interpreter Services, of which this judge is a member. Similar to, existing federal law as noted above, the proposed Ohio rule provides that in the event that a *certified* interpreter does not exist or is not reasonably available, the court may appoint a *"provisionally qualified* interpreter,"* and in the event that a provisionally qualified interpreter does not exist or is not reasonably available, a *"language skilled* interpreter."* The proposed rules set forth requirements for being considered certified, provisionally qualified, and language-skilled.

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information * * *.

Evid.R. 702 provides this court with general guidance on how to qualify an interpreter as an expert. However, more specific guidance regarding qualifying interpreters can be found in other credible sources to which this court now turns.

B.   *The Supreme Court of Ohio, Interpreters in the Judicial System: A Handbook for Ohio Judges, Chapter X*

{¶ 13} Chapter X of The Supreme Court of Ohio, Interpreters in the Judicial System: A Handbook for Ohio Judges is titled "Establishing Qualifications for Interpreters." The handbook provides a model voir dire for establishing the qualifications of an interpreter.[6] The model voir dire proposes the following questions that a court or counsel should ask:

- Do you have any training or credentials as an interpreter?
- If so, what was the granting authority and who sponsored the training?
- What is your native language?
- How did you learn English?
- How did you learn the foreign language?
- What was the highest grade you completed in school?
- Have you spent any time in the foreign country?
- Did you formally study the language in school? How long?
- How many times have you interpreted in court?
- How did you become familiar with legal terminology?
- Have you interpreted for this type of hearing or trial before? How many times?

---

**6.**   For additional suggested questions for establishing qualifications of an interpreter, see also The Community and Court Interpreters of the Ohio Valley ("CCIO") website at http://www. ccio.org/CCIO-SuggestedGuide.htm; Bruno G. Romero, Here Are Your Right Hands: Exploring Interpreter Qualifications (2008), 34 U.Dayton L.Rev. 1, 15.

- Are you familiar with the Code of Professional Responsibility for Court Interpreters? Explain some of its main points (e.g., accuracy, interpret everything said, impartiality, no conflicts of interest).
- Are you a potential witness in this case?
- Do you know or work for any of the parties?
- Do you have any other potential conflicts of interests with respect to this case?
- Have you had an opportunity to speak with the non-English-speaking person prior to these proceedings? Were there any particular communication problems?
- Are you familiar with the dialectal or idiomatic peculiarities of the parties or witnesses?
- Are you able to interpret simultaneously[7] without leaving out or changing anything that is said?
- Are you able to interpret consecutively?[8]
- Are you able to interpret in the simultaneous mode of interpretation?

{¶ 14} Additional questions include:

- How do you keep up with the foreign language?
- What do you do to keep your foreign language fluency?
- How many English-foreign language dictionaries do you own?
- Are any of them English-foreign language legal dictionaries?
- How much self-study do you do a month to prepare you for legal interpreting?

{¶ 15} The goal in asking the questions outlined above should be to establish that an interpreter has the following linguistic skills, abilities and professional knowledge:

- The ability to interpret in both consecutive and simultaneous modes.
- The ability to sight-translate[9] printed, typed or handwritten documents.

---

7. "Simultaneous interpretation is the technique of rendering the source language message into the target language while the original speaker continues to speak." Romero, supra note 6.

8. "Consecutive interpretation is the mode where the interpreter waits until the original speaker has completed his or her utterance before beginning to interpret that utterance." Romero, supra note 6.

9. "Sight translation refers to the hybrid mode in which the interpreter, without advance notice and after only briefly examining a document, provides an oral translation of it. Sight

- The ability to understand and employ the dialectal and cultural nuances of both English and the other language.
- A good grasp of jargon, slang and technical terminology in both languages.
- The ability to converse in a full range of registers in both languages.
- The ability to speak clearly and enunciate in both English and the other language.
- Good short-term memory, retention and communication skills.
- A wealth of legal terminology in both English and the other language.
- Familiarity with the Ohio court system and procedures, as well as some familiarity with the legal system(s) of the country of the other language.
- Familiarity with and a strong commitment to the Code of Ethics for Judiciary Interpreters (www.najit.org/ethics.html).

*C.   Consideration of Compliance with a Code of Professional Conduct for Court Interpreters and Translators*

{¶ 16} The court notes that an interpreter should be familiar with and abide by the Code of Professional Responsibility for Court Interpreters. Appendix H of the Proposed Amendments to the Rules of Superintendence for the Courts of Ohio[10] outlines a proposed Code of Professional Conduct for Court Interpreters and Translators. The defendant has called into question in particular the interpreter's compliance with proposed Canons 2, 6, and 7.

{¶ 17} Canon 2 addresses accuracy and completeness and states: "Interpreters and translators shall render a complete and accurate interpretation or translation without altering, omitting, or adding anything to what is spoken or written, and shall do so without explaining the statements of the original speaker or writer."[11]

---

translation is distinguished from other translation in that it is rendered orally and it is performed immediately ('on sight'), whereas translators ordinarily have the opportunity to do research and review the translation prior to final submission." Romero, supra note 6.

10.   See note 5.

11.   The Commentary to Canon 2 reads: "In order to preserve the court's record and assist in the administration of justice, interpreters should completely and accurately interpret the exact meaning of what is said or written without embellishing, explaining, omitting, adding, altering, or summarizing anything. This includes maintaining accuracy of style or register of speech, as well as not distorting the meaning of the source language, even if it appears obscene, incoherent, non-responsive, or a misstatement. Interpreters have a duty to inform the court of any error, misinterpretation, or mistranslation so that the record may be promptly corrected. The terms 'accurately,' 'completely,' and 'exact' do not signify a word-for-word or literal interpretation, but rather mean to convey the exact meaning of the speaker's or writer's discourse."

{¶ 18} Canon 6 addresses proficiency and states: "Interpreters and translators shall provide professional services only in matters in which they can proficiently perform."[12]

{¶ 19} Canon 7 addresses assessing and reporting impediments to performance and states: "Interpreters and translators shall at all times asses their ability to perform effectively and accurately. If an interpreter or translator discovers anything impeding full compliance with the interpreter's or translator's oath or affirmation and this code, the interpreter or translator shall immediately report this information to the court."[13]

{¶ 20} This proposed Ohio Code of Professional Conduct for Court Interpreters and Translators closely mirrors the Canons of Ethics and Conduct for Court Interpreters of the Community & Court Interpreters of the Ohio Valley ("CCIO"). The CCIO Canons can be found at http://www.ccio.org/CCIO-Codeof Ethics-Court.htm. The court also notes that the proposed Canon 2 is similar to the Canon 1 on Accuracy from the Code of Ethics and Professional Responsibilities of the National Association of Judiciary Interpreters & Translators ("NAJIT Code"). See Defendant's Exhibit F. Proposed Canon 6, and in particular the final paragraph of the Commentary for proposed Canon 6, is similar to Canon 6 on Maintenance and Improvement of Skills and Knowledge from the NAJIT

---

12. The Commentary to Canon 6 reads: "By accepting an assignment, interpreters and translators warrant they have the skills, training, and understanding of terminology to interpret or translate accurately and effectively in the given setting, are fluent in the required languages, and have the ability to understand regional differences and dialects. Interpreters have a duty to request from the court and the parties all pertinent information and materials necessary to prepare for the case or court function. Interpreters and translators should strive continually to improve language skills and knowledge of specialized vocabulary and familiarize themselves with the judicial system and any applicable court rules. Interpreters and translators are responsible for having the proper dictionaries and other reference materials available when needed."

13. The Commentary to Canon 7 reads: "Interpreters and translators must immediately inform the court of any condition interfering with their ability to provide accurate and complete interpretation or translation. This may include excessively rapid, quiet, or indistinct speech, physical interference such as inability to see exhibits, noise in their surroundings, or any other factor interfering with the interpreter's or translator's ability to hear, see, or communicate during the case or court function. Interpreters and translators must inform the court if they are having difficulties obtaining pertinent information or materials required to prepare for a case or court function that may impede their ability to perform adequately. If at the time of a hearing or trial the interpreter or translator has not been provided with necessary information or materials, the interpreter or translator must inform the court on the record and request a recess to review such information or materials. Interpreters and translators should withdraw from an assignment if they are unable to understand or satisfactorily communicate with the non-English speaking, limited English proficient, deaf or hard-of-hearing party, witness, or juror, or if they lack required skills, preparation, or terminology to perform effectively in the case or court function for which they have been summoned."

Code, and proposed Canon 7 is similar to Canon 8 on Impediments to Compliance from the NAJIT Code.

### D. *Federal Qualification Guidelines for Court Interpreters and Court Interpreter Regulations*

{¶ 21} As noted above, federal courts are required to appoint *certified* interpreters, or when no certified interpreter is reasonably available, an otherwise *qualified* interpreter. Pursuant to the Federal Court Interpreters Act, the Administrative Office of the United States Courts is required to provide federal district courts with guidelines for determining whether a noncertified interpreter is otherwise *qualified.* ("Federal Guidelines"). Section 1827(b)(2), Title 28, U.S.Code. The Federal Guidelines first note that "professionally qualified interpreters" include interpreters speaking languages *other than* Spanish. Interpreters of the Spanish language are expected to successfully complete the Federal Court Interpreter examination and become *certified.* In order for non-Spanish language interpreters to be considered "professionally qualified," however, they must demonstrate the following:

- Prior existing employment as a conference or seminar interpreter for the Office of Language Services of the United States Department of State, or the United Nations, or related agencies for which examinations are a condition of employment; or
- Membership in good standing in a professional interpreters association whose by-laws and practices at a minimum require as follows:
  - An application specifying a minimum of 50 hours of conference experience in the native language(s) of expertise, and
  - The sponsorship of three active members in good standing who have been members of the same association for at least two years, whose language(s) are the same as the applicant's, and who attest to having witnessed the performance of the applicant, as well as the accuracy of the statements on the application.

{¶ 22} Interpreters who do not qualify as professionally qualified interpreters or certified interpreters, but who can demonstrate to the satisfaction of the court their ability to interpret court proceedings from English to a designated language and from that language to English, will be placed on the court's local list and will be included on the director's master list as a "language skilled interpreter."

### III. Determination of Interpreter Qualifications in the Instant Case

{¶ 23} The interpreter in the instant case testified that he was born in Ecuador and his native language is Spanish. He began learning English at six years old when he and his family moved to New York. The interpreter testified

that he grew up speaking both English and Spanish and he attended a bilingual elementary school. He testified that he does not have an accredited degree from a college or university and he has had no formal training in linguistics, grammar, or legal studies. The interpreter testified that he is not a member of the National Association of Judiciary Interpreters and Translators or any other professional organization for court interpreters or general interpreters.

{¶ 24} The interpreter testified that he has had prior experience on occasion interpreting in the Franklin County Court of Common Pleas, Juvenile Division, and as a medical interpreter and a Medicaid-hotline interpreter. He testified that he has attended seminars sponsored by the Supreme Court of Ohio Interpreter Services Program regarding grammar, advanced interpreting, BCI forensics, and domestic violence. He also testified that he has attended seminars regarding the interpreter code of ethics. He provided no information, however, regarding the number of seminar or course hours he has attended.

{¶ 25} The interpreter testified that he has been employed for two and a half years with this court as a Spanish–English interpreter. Indeed, the defendant's attorneys and the prosecutor have previously stipulated to this interpreter's qualifications, and this court has found this interpreter to be qualified. The defendant's attorneys explained, however, that, due to their lack of Spanish language skills and/or inability to focus on the court proceeding while at the same time focus on the interpreter's interpretation, only recently have they become aware of deficiencies in the interpreter's interpretations. Although this judge is proficient in Spanish, she likewise is not able to conduct a hearing and at the same time listen to the interpreter's interpretation simultaneously being whispered into a defendant's ear. This judge also does not profess to qualify as a Spanish–English court interpreter. Therefore, the court is not able to detect errors in Spanish interpretation, as it would not be able to detect errors in Somali or Chinese Mandarin interpretation, two languages in which this court is not at all proficient. Like the defendant's attorneys, this court has only recently become aware of deficiencies in this interpreter's interpretation.

{¶ 26} Although the interpreter testified that he had been trained in the NAJIT court interpreter code of ethics, when pressed regarding the obligations of the code, the interpreter summarily stated that it included integrity, accuracy, proficiency, professionalism, and that he could not "mention all" the obligations.

{¶ 27} Troubling to this court was the interpreter's noncompliance with the NAJIT, CCIO, and proposed Ohio court interpreter codes of ethics regarding proficiency, maintenance, and improvement of skills and knowledge. The Commentary to proposed Ohio Canon 6 states: "Interpreters and translators should strive continually to improve language skills and knowledge of specialized vocabulary and familiarize themselves with the judicial system and any applicable court

rules. Interpreters and translators are responsible for having the proper dictionaries and other reference materials available when needed."

{¶ 28} The interpreter testified that he has "not mastered legal vocabulary in English or Spanish, for sure," but that because everything is repetitive in the courtrooms he has a "well enough grasp of actual phrases and words." He has not looked into the college-tuition-reimbursement program offered by the city of Columbus to take advanced Spanish language courses or legal-terminology training. He has tried to find legal transcripts, but has been unsuccessful. He testified that only recently has he begun to carry his dictionary with him.

{¶ 29} The interpreter also testified that recently he was made aware by his supervisor that certain Spanish words he was using to interpret[14] English legal terms or phrases were not correct. He testified that for example, his supervisor told him that he should not interpret the English word "defendant" as "defendido," but rather he should interpret "defendant" as "acusado." The interpreter testified further that initially he took under consideration the advice given to him by his supervisor, but that he has since determined there exists more than one way to interpret legal terms and he has come to the conclusion that the Spanish words he was using were correct. He said he has sources to back him up. The sources he pointed to included nonlegal television shows on the Univision Spanish language channel, nonlegal periodicals and newspapers, and a Spanish language form titled "Registro," which he obtained from the court's probation department. He testified that he had no idea who translated the Registro form, or the qualifications of the person who translated the Registro form, and that he was not aware that it was his job to ensure the translation was accurate. The interpreter also testified that it is not his practice to consult with his supervisor or the other Spanish language interpreter employed by this court. The court will note that both the supervisor, Melanie Langley, and the other Spanish language interpreter, Brenda Williams, have previously been determined to be qualified by this court. In particular the defendant's attorneys had the opportunity to review and consider Langley's qualifications as noted on Exhibits 2, 3, and 4 and stipulated to her qualifications at the hearing.[15]

---

14. "Interpretation is the process by which oral communication is rendered from one language to another. The original is either spoken or signed language, and the rendition is delivered either in another spoken language or in a signed language. Translation is the process by which written text is rendered from one language into another. The original is in written form, and the translation into the other language is also produced in written form. It is most simply put by the ATA that '[t]ranslation is written, whereas interpreting is spoken.'" Romero, supra note 6.

15. Since May 2006, Langley has been employed by the Franklin County Municipal Court to serve as a Spanish/English court interpreter. From 2002 until May 2006, Langley served as a court interpreter for the Clinton County Municipal and Common Pleas Courts as well as the

{¶ 30} By electing to follow the language examples set by nonlegal television shows, newspapers, and periodicals and forms translated into Spanish by unidentified translators rather than the language examples set by his supervisor, the interpreter has failed to abide by Ohio Canon 6.

{¶ 31} This court is also concerned with the interpreter's noncompliance with proposed Ohio Canon 2, which requires accuracy and completeness. The NAJIT Code's Canon 1 addresses the requirement of accuracy and states: "Guessing should be avoided. Court interpreters who do not hear or understand what a speaker has said should seek clarification." Much evidence was presented at the hearing to show that the interpreter appeared to be guessing when he did not know or understand the English word or concept he was asked to interpret. For example, defendant presented Defendant's Exhibits B and E, containing an oral and written transcript of a similar qualification hearing involving the same interpreter in case Nos. 2009 TRC 136118/2009 CRB 4434. In that case, the interpreter was asked to interpret the phrase "without prejudice." Defendant's witness, Guzman, a public defender, formally trained and fluent in English and Spanish, testified that the interpreter used the phrase "sin prejudaria" to convey "without prejudice." Guzman also testified that "prejudaria" is not a Spanish word. When asked by the court how he came up with the phrase "sin prejudaria," the interpreter testified that he did not know what "without prejudice" means in a legal context, he did not have his dictionary with him, and he did not consult with the other interpreters. He also seemed to confuse the Spanish word he used for "prejudice" with the Spanish word he used when asked to interpret the phrase "double jeopardy" as he intermingled the terms "prejudaria," "perjuicio," and "perjudicacion." In case Nos. 2009 TRC 136118/2009 CRB 4434, he intermingled these words as well as "perdidaria" preceded by the term "doble" to convey "double jeopardy." The interpreter testified that he does not know what "double jeopardy" means in English, yet he did not ask for clarification of the

city of Washington Municipal Court. As a court interpreter, she has interpreted and translated written documents. Langley was raised tri-lingual in Mexico, Brazil, and the United States and attended elementary and secondary school in English and Spanish, studying both grammar and writing. She has completed university coursework in the Spanish language and is presently studying to obtain her degree in Criminal Justice. She is also studying to take the Court Interpreters Certification Exam as soon as it is offered by the Supreme Court of Ohio. Langley has completed the following courtroom-interpretation courses and seminars: Supreme Court of Ohio programs including: Skills Building for Spanish–Speaking Interpreters, Ethical Boundaries for Court Interpreters, Domestic Violence and Interpretation, Two Americas: Mexican Immigrants in Ohio, Advanced Skills for Court Interpreters, and Legal Procedure and Terminology for Interpreters; and Community of Court Interpreters of the Ohio Valley programs including: Bureau of Criminal Identification and Investigation, Forensic Science & Hostage Negotiation, and 2005 and Ohio Valley Regional Interpreter Conference.

same before he attempted to interpret it. Witness Guzman testified that no such words exist.

{¶ 32} The interpreter was also asked to interpret the phrase "allied offenses of similar import" both at the hearing in case Nos. 2009 TRC 136118/2009 CRB 4434 and in the instant case. In case Nos. 2009 TRC 136118/2009 CRB 4434, the interpreter used the phrase "una ofensa de alyade reporte similar," which Guzman testified means "an insult of (not a Spanish word) similar complaint." The interpreter testified that he interpreted this phrase "word for word." The interpreter testified that when he does not know the meaning of an English word or phrase he will write it down for the future. However, he admitted that although he does not know the meaning of "allied offenses of similar import," he did not write it down when he was examined regarding the same in case Nos. 2009 TRC 136118/2009 CRB 4434 and he took no steps to commit it to memory. In fact, in the instant case, he seemed to confuse the meaning with the meaning of the term "enhanceable."

{¶ 33} The interpreter was also asked to interpret the offense "importuning." The interpreter said that he had "never heard of it," and he did not recall interpreting for attorney Nekervis in 2003 CRB 5090 several weeks ago regarding a defendant charged with importuning.

{¶ 34} Guzman testified that she was unable to find the word "defendido" in any general or legal English–Spanish dictionary she owns or in her Spanish Language Dictionary. She testified that it is her belief that no such word exists. She also testified that the interpreter used "conducta," which means "tube," for "conduct"; the unknown Spanish phrase "consentamente" for "knowingly"; "la prosecution," which means "pursuit," for "prosecutor"; "violencia," which means "violence," for "assault"; the unknown Spanish word "arramento" for "arraignment"; "cupando," which means "to blame," for "to prosecute"; "dejada," which means "drop shot," for "alleged"; and "violar," which means "rape," for "to violate"; among other errors.

{¶ 35} When asked by this court how he came up with Spanish words or phrases, the interpreter testified that he relied on his common knowledge of certain English words to figure it out or he reaches for other words that mean the same thing. The interpreter proceeds in this manner notwithstanding the following excerpt from a law review article on interpreters: "In casual settings, an interpreter may simply use common courtesy or personal judgment to convey meaningful information. In formal or official situations, however, an interpreter may be required to act within predetermined rules or protocol. Court or legal interpreting is in fact, subject to such predetermined rules and protocol. Thus, interpreters in the legal field must work within this framework. Interpreters in this arena must utilize particular techniques in the communication process and

demonstrate an understanding of legal terms and legal concepts. Interpreters cannot interpret what they do not know or understand." Bruno G. Romero, Here Are Your Right Hands: Exploring Interpreter Qualifications (2008), 34 U.Dayton L.Rev. 1.

{¶ 36} The interpreter testified that he has "the gist" of legal terminology in this particular court.

{¶ 37} Based on the evidence presented above, this court can only assume that when the interpreter does not understand the English word or phrase used, he often guesses at the appropriate interpretation. It appears that he uses made-up words and that he does not take steps to clarify the English meaning or consult with his supervisor, a dictionary, or other credible source for an accurate interpretation. Thus, the interpreter fails to abide by proposed Ohio Canon 1 on accuracy and completeness. Furthermore, understanding the "gist" of legal terminology does not suffice in this court.

## CONCLUSION

{¶ 38} With all this in mind, this court is not able to conclude that the interpreter, Ricardo Bustos, is qualified to interpret for defendant in this court proceeding. The interpreter is bilingual and has taken some important steps toward becoming a qualified court interpreter; however, at this time, this court determines that Bustos is not qualified as a court interpreter.

{¶ 39} Therefore, this court appoints Brenda Williams to interpret for defendant, as defendant has already stipulated to her qualifications and this court has found her to be qualified.

So ordered.