[Cite as *Woodmere v. Alekseyev*, 2012-Ohio-3248.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97112**

## VILLAGE OF WOODMERE

PLAINTIFF-APPELLEE

vs.

## ANDREY P. ALEKSEYEV

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Bedford Municipal Court
Case No. 11 TRD 03249

**BEFORE:** Celebrezze, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 19, 2012

**ATTORNEYS FOR APPELLANT**

Michael J. Goldberg
John J. Dowell
The Goldberg Law Firm
323 Lakeside Avenue, West
450 Lakeside Place
Cleveland, Ohio   44113


**ATTORNEY FOR APPELLEE**

Lon D. Stolarsky
Prosecutor
Village of Woodmere
5333 Northfield Road
Suite 250
Bedford Heights, Ohio   44146

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, Andrey P. Alekseyev, appeals from the judgment of the Bedford Municipal Court finding him guilty of failure to obey traffic lights. After careful consideration of the record and relevant case law, we affirm appellant's conviction.

**{¶2}** On May 7, 2011, appellant was issued a traffic citation in the village of Woodmere for a violation of Woodmere Codified Ordinances 313.03, failure to obey traffic lights. On June 4, 2011, appellant entered a plea of not guilty to the citation and a trial was scheduled.

**{¶3}** On June 29, 2011, this matter proceeded to a bench trial. At the conclusion of trial, the trial court returned a verdict of guilty and sentenced appellant to a $500 fine and costs.

**{¶4}** Appellant brings this timely appeal, raising two assignments of error for review.

Law and Analysis

I. Manifest Weight

**{¶5}** In his first assignment of error, appellant argues that his conviction was against the manifest weight of the evidence.

**{¶6}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the

credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶7} We are mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶8} In the instant matter, in order to secure a conviction under Woodmere Codified Ordinances 313.03, the prosecution was required to prove that appellant "disobey[ed] the instructions of any traffic control device placed in accordance with the provisions of this Traffic Code."

{¶9} At trial, Officer Robert Chilton of the Woodmere Police Department testified that on May 7, 2011, he observed appellant illegally run a red light on Maplecrest Road at

the intersection of Chagrin Boulevard.    Officer Chilton provided the following testimony

on direct examination:

> OFFICER CHILTON:   There is a traffic light.   It is a T-intersection.
> Chagrin Boulevard runs north and south.    That particular vehicle that you
> are talking about was the first vehicle in line on Maplecrest pointing
> northbound at the intersection of Chagrin, and the light was working
> completely.

> PROSECUTOR: What did you observe that grey vehicle do?

> OFFICER CHILTON: While the traffic light was red, the party in the grey
> vehicle looks right, looks left, traffic goes past.   While the light was red
> for Maplecrest, he pulls into the intersection and continues driving
> westbound on Chagrin.

{¶10} Appellant testified on his own behalf, with the use of a Russian language

interpreter.    Appellant testified that he believed the traffic signal was malfunctioning and

that he acted appropriately pursuant to R.C. 4511.132, which provides in relevant part:

> (A) The driver of a vehicle, * * * who approaches an intersection where
> traffic is controlled by traffic control signals shall do all of the following, if
> the signal facing the driver either exhibits no colored lights or colored
> lighted arrows or exhibits a combination of such lights or arrows that fails
> to clearly indicate the assignment of right-of-way:

> (1) Stop at a clearly marked stop line, but if none, stop before entering the
> crosswalk on the near side of the intersection, or, if none, stop before
> entering the intersection;

> (2) Yield the right-of-way to all vehicles, streetcars, or trackless trolleys in
> the intersection or approaching on an intersecting road, if the vehicles,
> streetcars, or trackless trolleys will constitute an immediate hazard during
> the time the driver is moving across or within the intersection or junction of
> roadways;

> (3) Exercise ordinary care while proceeding through the intersection.

{¶11} On review of the record, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. The trial court, as trier of fact, was in the best position to assess the credibility of the witnesses and was free to believe Officer Chilton's testimony that the traffic device was functioning properly, despite appellant's allegations to the contrary. The trial court heard all of the testimony at issue, including the conflicting testimony of appellant and Officer Chilton, and made a determination that Officer Chilton was more credible.

{¶12} Deferring to the trial court's assessment of the credibility of the witnesses, as we must, we cannot say that the trier of fact lost its way and performed a miscarriage of justice in finding appellant guilty of failure to obey traffic lights.

{¶13} Based on the foregoing, we find that appellant's conviction for failure to obey traffic lights was not against the manifest weight of the evidence.

{¶14} Appellant's first assignment of error is overruled.

II.   Interpreter's Failure to Provide Literal
Translation of Appellant's Testimony

{¶15} In his second assignment of error, appellant argues that he was denied due process and a fair trial because the interpreter did not provide verbatim interpretations of his testimony and further provided individual conclusions, in violation of the Ohio state constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

{¶16} Pursuant to R.C. 2301.12(A), trial courts are authorized to employ

[a] court interpreter, who shall take an oath of office, hold his position at the will and under the direction of the court, interpret the testimony of witnesses, translate any writing necessary to be translated in court, or in a cause therein, and perform such other services as are required by the court.

{¶17} The interpreter may not give his own conclusions with respect to the answers of a witness, but should give a literal interpretation of the language employed by the witness. *State v. Rodriguez*, 110 Ohio App. 307, 169 N.E.2d 444 (6th Dist.1959).

{¶18} The proper procedure for the use of an interpreter in court is set forth in *State v. Pina*, 49 Ohio App.2d 394, 361 N.E.2d 262 (2d Dist.1975):

If a witness does not understand English, an interpreter will be sworn to interpret the oath to him and his testimony to the court. 56 Ohio Jurisprudence 2d 516, Witnesses, Section 86; 172 A.L.R. 923. An interpreter is considered and must be sworn as any other witness. While the manner of eliciting the testimony of the witness through an interpreter is within the discretion of the trial court, the proper method is not to address the question to the interpreter but to the witness. The question is then repeated by the interpreter without any remarks of his own, and the answers must be repeated literally by the interpreter in the first person. The interpreter should give the answer, and the whole answer of the witness, adding nothing to it. 58 American Jurisprudence 309, Witnesses, Section 556.

{¶19} Appellant contends that "it is clear from reviewing the record that the interpreter, while sworn, did not provide a true and accurate translation of the defendant-appellant's testimony and added her own conclusions to the testimony."

{¶20} During the direct examination of appellant, the trial court interrupted appellant's testimony, stating:

COURT: Excuse me. There is a lot of going back and forth between them for yes and no answers.

* * *

I have had one seminar on translation. And if he asks a yes or no question, ma'am, there shouldn't be minutes of talk. * * *

So either you are not doing the translating right or he is just talking too much. But one way or the other, let's clean this up.

Ask simple questions, short answers. And you are not, no offense ma'am, I don't think you are doing it, you are not allowed to testify, you are not allowed to tell him what to say.

INTERPRETER: I understand, I understand. I am trying to understand what he means by what he is saying.

COURT: But you are not here to interpret that way. You are supposed to translate.

**{¶21}** Appellant argues that, despite the trial court's instruction to the interpreter, his testimony continued to be inaccurately translated to the finder of fact.

**{¶22}** On October 31, 2011, this court granted appellant's motion to supplement the record. Accordingly, he submitted a Russian-to-English translation of his audio-recorded testimony. The translation was performed by The Language Source, a Cleveland-based company that specializes in the language translation of documents. In contrast to the trial court's transcript, The Language Source translated the actual statements appellant made to the interpreter. Therefore, this court was provided with the rare opportunity to compare appellant's actual testimony with the translation provided to the finder of fact by the interpreter.

**{¶23}** On review of the transcript and the supplemented translation provided by The Language Source, we are unable to conclude that the interpreter improperly provided the trier of fact with her own conclusions with respect to appellant's testimony. While

we acknowledge that the interpreter's translation varies from the translation provided by The Language Source, the variances are minimal and are essentially semantic distinctions without differences.

{¶24} Given the examples of the alleged improper translations provided by appellant, we find that the potential translation errors were harmless beyond a reasonable doubt. Crim.R. 52(A) (defining harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights").

{¶25} Appellant's second assignment of error is overruled.

{¶26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR