[Cite as *State v. Wang*, 2015-Ohio-439.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

STATE OF OHIO C.A. No. 13CA0027-M

    Appellee

    v. APPEAL FROM JUDGMENT
ENTERED IN THE
XIAOLONG WANG MEDINA MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
    Appellant CASE No. 2012 CRB 01547AB

DECISION AND JOURNAL ENTRY

Dated: February 6, 2015

HENSAL, Judge.

{¶1} Appellant, Xiaolong Wang, appeals his convictions in the Medina Municipal Court. For the following reasons, this Court reverses.

I.

{¶2} Mr. Wang was charged with two counts of domestic violence in violation of Revised Code Sections 2919.25(A) and (C). The trial court appointed an interpreter who was fluent in Mandarin Chinese to interpret the testimony of the victim, Y.F.L. During Y.F.L.'s testimony, Mr. Wang, who is also fluent in Mandarin Chinese but did not require an interpreter himself in order to effectively participate in the proceedings, objected to the adequacy of the interpretation. He maintained that the interpreter was paraphrasing the prosecutor's questions and summarizing the witness' answers. One of the victim's friends testified under oath that she is fluent in Mandarin Chinese. She corroborated Mr. Wang's objection that the interpreter was not interpreting Y.F.L.'s testimony verbatim. The trial court overruled Mr. Wang's objection on

the basis that he failed to prove any specific instances where the interpretation was inaccurate. After a bench trial, Mr. Wang was convicted of domestic violence in violation of Section 2919.25(A) but acquitted of domestic violence under Section 2919.25(C). He appeals raising four assignments of error for this court's review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT DENIED MR. WANG DUE PROCESS AND A FAIR TRIAL BECAUSE THE INTERPRETER DID NOT PROVIDE VERBATM INTERPRETATIONS OF THE STATE'S WITNESS' TESTIMONY AND FURTHER PROVIDED INDIVIDUAL CONCLUSIONS, IN VIOLATION OF THE CONSTITUTION OF THE STATE OF OHIO AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶3} In his first assignment of error, Mr. Wang argues that the trial court erred in allowing Y.F.L. to continue testifying through the same interpreter because the interpreter paraphrased the prosecutor's questions and summarized the victim's testimony and for not striking this testimony from the record. "[A]n appellate court will not disturb a decision of the trial court regarding the necessity of an interpreter absent an abuse of discretion." *State v. Razo*, 157 Ohio App.3d 578, 2004-Ohio-3405, ¶ 4 (9th Dist.). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An appellate court may not substitute its judgment for that of the trial court when reviewing a matter pursuant to this standard. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶4} Revised Code Section 2311.14(A)(1) provides that, "[w]henever because of a hearing, speech, or other impairment a * * * witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person."

The interpreter is not, however, allowed to interpose her own conclusions of the witness' answers. *See State v. Patel*, 9th Dist. Summit No. 24024, 2008-Ohio-4692, ¶ 47; *State v. Pena*, 49 Ohio App.2d 394, 399 (2d Dist.1975) (concluding that it is prejudicial error to accept interpreter's individual conclusion of whether the defendant understands his rights when pleading guilty); *State v. Rodriguez*, 110 Ohio App. 307, 316 (6th Dist.1959) ("disapprov[ing]" practice of allowing interpreter to state his conclusions of witnesses' answers rather than literal interpretation). "[I]t may be reversible error for a trial court to permit an interpreter to convey the interpreter's own conclusion as to a [witness'] answers." *State v. Lopez*, 6th Dist. Ottawa No. OT-05-059, 2007-Ohio-202, ¶ 11. Apart from this restriction, the trial court has "considerable latitude" in deciding the manner in which the interpretation is conducted. *Patel* at ¶ 47, quoting *Lopez* at ¶ 11. "Verbatim translation is desirable, but not essential, and the trial court has the discretion to determine whether a satisfactory translation occurred." *Id*.

{¶5} After inquiring of the interpreter under oath about her education and experience, the trial court found that she satisfied the requirements to serve as an interpreter. The victim was the State's first witness. The majority of the witness' testimony was labeled as "unintelligible" on the trial transcript. For example:

> STATE: Would you tell the Court how the conflict started.
> * * *
> THE TRANSLATOR: We had a conflict, then he began to (unintelligible), then I slapped him (unintelligible), then he pulled me to the living room, then he began to (unintelligible) the furniture (unintelligible). Then he (unintelligible) the baby. She very angry at him. Then he began to (unintelligible).

{¶6} Part way through Y.F.L.'s testimony, the State requested a side bar and informed the court that he was provided a note from one of the victim's friends, Lisa Hurst, who was sitting in the audience. According to the prosecutor, the note from Ms. Hurst indicated that the interpretation provided by the interpreter was inaccurate.

{¶7} Without being placed under oath, Mr. Wang explained to the court that Y.F.L. testified in the form of several sentences but that the interpreter only interpreted her testimony into a single summary sentence. He further indicated that the interpreter was not interpreting the prosecutor's questions verbatim.

{¶8} Ms. Hurst testified under oath that she is fluent in Mandarin Chinese. According to her, the interpreter interpreted the word "furniture" when Y.F.L. did not use that word. The trial judge indicated that he did not hear the word "furniture" while Ms. Hurst testified that she heard the interpreter state that Mr. Wang was "throwing furniture around." The transcript reveals that the interpreter did say the word "furniture." The parties' dispute centered on whether Y.F.L. testified that Mr. Wang threw either objects or furniture during the incident.

{¶9} The trial judge further stated that "it appeared to me that the translator may not have understood or been able to translate the word choking, at least that's sort of what I heard." Ms. Hurst stated that the interpreter should be able to interpret the word "choking."

{¶10} The trial court ruled that the interpreter remained qualified to participate in the proceedings as she was providing a "reasonable translation." Mr. Wang objected to the ruling arguing that the interpretation was not "specific enough" and that an inaccurate interpretation would hamper his defense that he was venting his frustration and was not trying to cause harm. He distinguished between throwing objects, which he theorized could become a projectile when thrown, and throwing furniture, which he characterized as an act of frustration. The trial court overruled Mr. Wang's objection and reaffirmed its ruling that the interpreter was qualified. The interpreter was then instructed by the court not to add or omit anything to Y.F.L.'s testimony and to refrain from summarizing the testimony. Thereafter, Y.F.L. continued to testify through the same interpreter until the court adjourned the proceedings for the day. The second day of the

trial began with Y.F.L.'s continued testimony but with a different interpreter. There is no indication from the record that there were any interpretation issues on the second day of trial or that Mr. Wang was unable to effectively cross-examine the victim.

{¶11} After a careful review of the record, this Court concludes that the trial court abused its discretion in permitting the interpreter to continue interpreting Y.F.L.'s testimony. The record reflects that both Mr. Wang and the victim's friend, Ms. Hurst, alerted the court to discrepancies between what Y.F.L said and how the interpreter interpreted it. The victim's friend, Ms. Hurst, testified that the interpreter interpreted Y.F.L.'s testimony as being that Mr. Wang was throwing furniture around when she never used the word "furniture." The problems with the interpretation provided by the first interpreter were validated on cross-examination when Y.F.L., through the second interpreter, testified that Mr. Wang did not throw the furniture at her. Rather, Y.F.L.'s testimony was that he overturned several items of furniture in the kitchen.[1]

{¶12} While we recognize that verbatim interpretation is "desirable, but not essential," under the facts of this case, Mr. Wang presented a compelling argument that the misinterpretation made a difference to his defense that he was venting his frustration rather than throwing items at the victim to inflict injury. *Patel*, 2008-Ohio-4692, ¶ 47. Y.F.L. testified on cross-examination that she was arguing with Mr. Wang when she threw hot ginger water on him in response to hurtful things he said about her. She affirmed that this made Mr. Wang angrier. Y.F.L. further testified that she then slapped Mr. Wang.

---

[1] Y.F.L. testified that several photographs of her kitchen and the overturned items represented the scene on the night of the incident. We note that these photographs were not made a part of the record on appeal.

**{¶13}** Although not relied on by Mr. Wang, our conclusion that the trial court erred is supported by Superintendent Rule 88(D)(1). That rule provides that, "when appointing a foreign language interpreter * * *, a court shall appoint a Supreme Court certified foreign language interpreter to participate in-person at the case or court function." There is no indication in the record that either of the interpreters that the trial court appointed was certified by the Supreme Court Language Services Program. Sup.R. 81(A). While a non-certified interpreter may be appointed if a certified interpreter is unavailable, the trial court "shall summarize on the record its efforts to obtain a Supreme Court certified foreign language interpreter * * *." Sup.R. 88 (D)(2), (3). The trial court did not summarize its effort to obtain a certified interpreter before appointing either interpreter in this case.

**{¶14}** We agree with Mr. Wang that his constitutional rights to due process and a fair trial were violated by the inadequate interpretation provided by the first interpreter. *See State v. Pina*, 49 Ohio App.2d 394, 401 (2d Dist.1975). *Accord Robinson v. Wolfenbarger*, E.D.Michigan No. 04-CV-70929-DT, 2006 WL 897333, *4 (Apr. 5, 2006), quoting *United States v. Long*, 301 F.3d 1095, 1105 (9th Cir.2002). ("[W]hile the general standards for interpreters requires continuous word-for-word translation, occasional lapses in the standard will not necessarily contravene a defendant's constitutional rights"). Constitutional error can be harmless, however, if it was harmless beyond a reasonable doubt. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 46. *See also Woodmere v. Alekseyev*, 8th Dist. Cuyahoga No. 97112, 2012-Ohio-3248, ¶ 24 (concluding that potential interpretation errors were harmless beyond a reasonable doubt). Criminal Rule 52(A) defines "[h]armless error" as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." "The term 'substantial rights' has been interpreted to require that 'the error must have been prejudicial.'"

(Emphasis deleted.) *State v. Morris*, __ Ohio St.3d __, 2014-Ohio-5052, ¶ 23, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶ 7. In other words, to be a prejudicial error, "[i]t must have affected the outcome of the [trial] court proceedings." *Fisher* at ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 734 (1993).

{¶15} Because most of the testimony given through the first interpreter is unintelligible in the record it is difficult to determine whether it affected the outcome of the trial and whether it should have been stricken from the record. During a harmless-error inquiry, however, "the state has the burden of proving that the error did not affect the substantial rights of the defendant." *Morris* at ¶ 23, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 15. The State did not file a brief on appeal and, therefore, did not satisfy its burden of demonstrating that the error was harmless under Rule 52(A). *See State v. Lusher*, 4th Dist. Gallia No. 11CA1, 2012-Ohio-5526, ¶ 67, 70. After reviewing the record, this Court is unable to conclude that the interpretation issues did not affect the outcome of Mr. Wang's trial. Accordingly, his first assignment of error is sustained.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING HEARSAY EVIDENCE BY [THE FIRST INTERPRETER] PREJUDICING MR. WANG'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ART. I, SEC. 10 OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO USE UNAUTHENTICATED PHOTOGRAPHIC EVIDENCE IN VIOLATION OF OHIO RULE OF EVIDENCE 901.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING HEARSAY AND DOUBLE HEARSAY EVIDENCE BY SERGEANT

SIMPSON PREJUDICING MR. WANG'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ART. I, SEC. OF THE OHIO CONSTITUTION.

**{¶16}** In light of our resolution of Mr. Wang's first assignment of error, we conclude that his remaining assignments of error are moot, and we decline to address them at this time. *See* App.R. 12(A)(1)(c). This decision should not be read as barring Mr. Wang from raising any arguments related to issues that this Court has declined to address in this appeal due to mootness. Mr. Wang's second, third, and fourth assignments of error are moot at this time.

III.

**{¶17}** Mr. Wang's first assignment of error is sustained. His second, third, and fourth assignments of error are moot. The judgment of the Medina Municipal Court is reversed and the cause is remanded for a new trial.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

BELFANCE, P. J.
CONCURS.

MOORE, J.
DISSENTING.

{¶18} I am not convinced that the trial court abused its discretion in refusing to dismiss the interpreter on the first day of trial. Assuming, however, that failure to do so was error, the record establishes that it was harmless beyond a reasonable doubt. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). First of all, this was not a trial to a jury, but rather a trial to the court. As a result, we are not in danger of lay jurors being carried away with emotion and failing to follow the applicable law. In this context, a police officer gave unrefuted testimony that the appellant on the evening of his arrest repeatedly admitted that he had choked his wife. Second, when court resumed, a new interpreter was utilized and provided services for the balance of the trial. Neither party had objections or complaints to the manner in which this interpreter discharged her duties. When trial resumed, the victim continued her testimony and testified that the result of appellant's actions were visible marks on her neck, and that she grew faint during the attack. The appellant elected not to present any evidence, as was his right. Notwithstanding the State's failure to file a brief in this matter, the record before us makes clear that any error of the court in

failing to dismiss the interpreter on the first day of trial was harmless beyond a reasonable doubt. Accordingly, I would overrule Mr. Wang's first assignment of error.

{¶19} Having overruled Mr. Wang's first assignment of error, I would then proceed to review Mr. Wang's second through fourth assignments of error, which I would overrule. Consequently, I would affirm the decision of the trial court.

APPEARANCES:

MICHAEL T. CALLAHAN, Attorney at Law, for Appellant.

GREGORY A. HUBER, Attorney at Law, for Appellee.