[Cite as *State v. Bravo*, 2017-Ohio-272.]

STATE OF OHIO )                IN THE COURT OF APPEALS
)ss:                           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO                  C.A. No.    27881

    Appellee

    v.                         APPEAL FROM JUDGMENT
                              ENTERED IN THE
ROSA SALTOS BRAVO             COURT OF COMMON PLEAS
(fka ROSA L. CARDENAS)        COUNTY OF SUMMIT, OHIO
                              CASE No.    CR 2004 03 1017
    Appellant

DECISION AND JOURNAL ENTRY

Dated: January 25, 2017

CARR, Presiding Judge.

{¶1} Appellant Rosa Bravo (fka Cardenas) appeals her conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Bravo is an Ecuadorian national, living in the United States of America. In April 2004, Bravo was indicted on one count of tampering with records, one count of possessing criminal tools, and one count of forgery, all of which implicated the use of a fraudulent social security card to obtain an Ohio driver's license. With the assistance of a Spanish interpreter, she pleaded guilty to the charges of possessing criminal tools and forgery, which were both felonies of the fifth degree. The State dismissed the records tampering charge. The trial court sentenced Bravo, who was again assisted by a Spanish interpreter, to two years of community control, which was to commence on June 29, 2004. The sentencing entry was served on the Immigration

and Naturalization Service ("INS"). Upon recommendation of the Adult Probation Department, the trial court terminated Bravo's community control effective April 7, 2006.

{¶3} In May 2015, Bravo filed a motion to reopen the proceedings and vacate her conviction. She effectively sought to withdraw her guilty plea on the basis that it was not knowingly, voluntarily, and intelligently entered because, due in part to the ineffective assistance of counsel at the plea hearing, she did not understand the immigration ramifications of her plea. The State opposed the motion. The trial court denied Bravo's motion without analysis. Bravo appealed, raising five assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO WITHDRAW HER GUILTY PLEA AND VACATE HER CONVICTION PURSUANT TO OHIO CRIMINAL RULE 32.1 AS THE APPELLANT ESTABLISHED THAT SHE WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL[.]

{¶4} Bravo argues that the trial court erred by denying her motion to withdraw her guilty plea pursuant to Crim.R. 32.1 on the basis that she was denied the effective assistance of counsel during her change of plea hearing. Bravo argues that trial counsel was ineffective for failing to advise her of the risk of deportation should she plead guilty. This Court disagrees.

{¶5} In this assignment of error, Bravo does not challenge the trial court's denial of her motion to withdraw her guilty plea on the basis of R.C. 2943.031(D) which enunciates the standard for withdrawal of a plea based on the trial court's failure to give a noncitizen of the United States the advisement specified by statute prior to accepting a plea of guilty or no contest. Instead, she relies on R.C. 2943.031(F) which does not prevent a trial court from allowing a noncitizen defendant to withdraw her plea pursuant to Crim.R. 32.1, either in lieu of the standard

enunciated in R.C. 2943.031(D) or in addition to it. Although Bravo's motion was predominantly premised on the narrow relief offered pursuant to R.C. 2943.031(D), she did reference Crim.R. 32.1 very briefly, arguing that she should be permitted to withdraw her plea because her attorney failed to advise her regarding the immigration consequences of her plea. "'Criminal defendants who are not United States citizens are permitted to withdraw a guilty plea in two distinct ways: (1) upon the finding that they were not given the warning required by R.C. 2943.031(A)(1) (and that the court was not relieved of that requirement under R.C. 2943.031(B)) of the potential consequences to their resident status in the United States when they pled guilty to criminal charges (among other related requirements contained in R.C. 2943.031(D)), or (2) when a court finds, pursuant to Crim.R. 32.1, that it is necessary to correct manifest injustice.'" *State v. Cardenas*, 2d Dist. Darke No. 2015-CA-16, 2016-Ohio-5537, ¶ 14, quoting *State v. Toyloy*, 10th Dist. Franklin No. 14AP-463, 2015-Ohio-1618, ¶ 12. To the limited extent that she argued for relief pursuant to Crim.R. 32.1, this Court addresses her argument.

{¶6} Crim.R. 32.1 provides that a trial court "after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea" to correct a "manifest injustice." Bravo relies on *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, ¶ 26, for the proposition that the standard in R.C. 2943.031(D) supplants the requirement that a defendant must demonstrate "manifest injustice" to justify withdrawal of her plea. While *Francis* clearly recognizes that R.C. 2943.031(D) enunciates a distinct standard to allow a noncitizen defendant to withdraw her plea where a trial court has failed to give the proper statutory advisement, the statute does not prohibit a noncitizen defendant from seeking to withdraw her plea via the more conventional standard enunciated in Crim.R. 32.1. Specifically, R.C. 2943.031(F) provides: "Nothing in this section shall be construed as preventing a court, in the sound exercise of its

discretion pursuant to Criminal Rule 32.1, from setting aside the judgment of conviction and permitting a defendant to withdraw his plea." Accordingly, the statute recognizes two distinct opportunities, with their respective standards, for a noncitizen defendant to seek to withdraw her plea.

{¶7} The crux of Bravo's argument is that her plea was not constitutionally valid because trial counsel was ineffective for failing to advise her regarding the immigration ramifications of entering a guilty plea. This Court has held that "'[a] guilty plea is not voluntary if it is the result of ineffective assistance of counsel.'" *State v. Liu*, 9th Dist. Summit No. 24112, 2008-Ohio-6793, ¶ 22, quoting *State v. Banks*, 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. "The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel." *Liu* at ¶ 22, citing *Banks* at ¶ 16.

{¶8} This Court uses a two-step process as set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to determine whether a defendant's right to the effective assistance of counsel has been violated.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.*

{¶9} This Court has stated:

> When the *Strickland* test is applied to guilty pleas, the defendant must first show that counsel's performance was deficient. *State v. Xie*, 62 Ohio St.3d 521, 524 (1992); *Strickland*, 466 U.S. at 687. Next, the defendant must show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty. *Xie*, 62 Ohio St.3d at 524, quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]he mere fact that, if not for the alleged ineffective assistance, the defendant would not have entered the guilty plea, is not sufficient to establish the

necessary connection between the ineffective assistance and the plea; instead, the ineffective assistance will only be found to have affected the validity of the plea when it precluded the defendant from entering the plea knowingly and voluntarily." *State v. Doak*, 7th Dist. Columbiana Nos. 03CO15 and 03CO31, 2004-Ohio-1548, ¶ 55, quoting *State v. Whiteman*, 11th Dist. Portage No. 2001-P-0096, 2003-Ohio-2229, ¶ 24.

*State v. Gegia*, 157 Ohio App.3d 112, 2004-Ohio-2124, ¶ 17 (9th Dist.).

{¶10} The Ohio Supreme Court has recognized that a court need not analyze both prongs of the *Strickland* test, where the issue may be disposed upon consideration of one of the factors. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989). Specifically,

"[a]lthough we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing in one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."

*Id*., quoting *Strickland*, 466 U.S. at 697.

{¶11} In addressing the first prong of *Strickland*, the United States Supreme Court held that an attorney's performance is deficient when he has failed, at a minimum, to advise a noncitizen defendant-client that "pending criminal charges may carry a risk of adverse immigration consequences." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). Moreover, an attorney's performance is deficient when his advice regarding deportation issues which are readily determinable is incorrect. *Id*. Later, the United States Supreme Court considered whether *Padilla* applied retroactively. *Chaidez v. United States*, 133 S.Ct. 1103 (2013). Concluding that *Padilla* enunciated a new rule, the *Chaidez* court held that it did not have

retroactive effect. *Id.* at 1105. Accordingly, "defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id.* at 1113.

{¶12} Bravo premises her ineffective assistance of counsel claim solely on counsel's failure to advise her regarding immigration issues arising out of her guilty plea. Because her conviction became final in 2004, prior to the United States Supreme Court's opinion in *Padilla*, Bravo cannot rely on it to establish counsel's deficient performance merely because he did not advise her that there may be adverse immigration consequences if she were to plead guilty. *Chaidez*, 133 S.Ct. at 1113. As she failed to allege any other conduct by trial counsel that was deficient, she had not established the ineffective assistance of counsel. Accordingly, this Court concludes that the trial court did not err by denying her motion to withdraw her guilty plea pursuant to Crim.R. 32.1. on the basis of the ineffective assistance of trial counsel.

{¶13} To the extent that Bravo asks that we apply the reasoning and holding in *Mezo v. Holder*, 615 F.3d 616 (6th Cir.2010), we decline. *Mezo* addressed the application of the equitable tolling doctrine to permit the Board of Immigration Appeals to reopen her appeal for the reason that she received ineffective assistance of counsel in conjunction with hearings before an immigration judge. *Id.* at 620. Mezo was not subjected to criminal charges or criminal proceedings. Accordingly, it has no applicability to the issues raised in this assignment of error.

{¶14} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE COURT FAILED TO GIVE THE VERBATIM ADVISEMENT REQUIRED UNDER ORC 2943.031[.]

{¶15} Bravo argues that the trial court erred by denying her motion to withdraw her guilty plea because the trial court failed to provide her with the statutory advisement as required

in R.C. 2943.031(A)/(D). In the alternative, she argues that the trial court failed to ensure that she understood the advisement. This Court disagrees.

{¶16} As a general matter, the decision to grant or deny a motion to withdraw a guilty plea lies within the sound discretion of the trial court. *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶17} "[T]he extent of the trial court's exercise of discretion on a motion to withdraw a plea is determined by the particular provisions that govern the motion under which the defendant is proceeding and the caselaw interpreting those provisions." *Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, at ¶ 33. The high court continued:

> Thus, for example, when a defendant who is a United States citizen files a typical Crim.R. 32.1 motion to withdraw a plea after sentencing, the trial court's exercise of discretion is governed by the manifest-injustice standard of that rule. Similarly, when a defendant's motion to withdraw is premised on R.C. 2943.031(D), the standards within that rule guide the trial court's exercise of discretion.

*Id.*

{¶18} In this case, Bravo argues that the trial court failed to comply with the mandates of R.C. 2943.031. R.C. 2943.031(A) states:

> Except as provided in division (B) of this section, prior to accepting a plea of guilty or a plea of no contest to an indictment, information, or complaint charging a felony or a misdemeanor other than a minor misdemeanor if the defendant previously has not been convicted of or pleaded guilty to a minor misdemeanor, the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement:

"If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Upon request of the defendant, the court shall allow him additional time to consider the appropriateness of the plea in light of the advisement described in this division.

**{¶19}** R.C. 2943.031(D) states:

Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or no contest and enter a plea of not guilty or not guilty by reason of insanity, if, after the effective date of this section [October 2, 1989], the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

**{¶20}** At the plea hearing, the trial court judge determined that Bravo had been in the United States for six years and that she was an Ecuadorean national. After engaging in a colloquy with Bravo regarding the constitutional rights she would be waiving by pleading guilty, the judge further advised her:

Now, also, if you're not a citizen of this country, a conviction of this offense to which you're pleading guilty may have the consequences of deportation, exclusion of admission to the United States, or denial of the naturalization process.

Do you understand that also?

Bravo, through an interpreter, asserted that she understood.

**{¶21}** Bravo relies on *Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, for the proposition that the trial court's failure to give the R.C. 2943.031(A) warning verbatim requires the trial court to grant the defendant's motion to withdraw her guilty plea. The Ohio Supreme Court held:

A trial court accepting a guilty or no contest plea from a defendant who is not a citizen of the United States must give verbatim the warning set forth in R.C. 2943.031(A), informing the defendant that conviction of the offense for which the plea is entered "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

*Francis* at paragraph one of the syllabus.

**{¶22}** The *Francis* court, however, rejected the requirement for strict compliance with the statutory language, adopting instead a substantial compliance requirement, as follows:

If some warning of immigration-related consequences was given at the time a noncitizen defendant's plea was accepted, but the warning was not a verbatim recital of the language in R.C. 2943.031(A), a trial court considering the defendant's motion to withdraw the plea under R.C. 2943.031(D) must exercise its discretion in determining whether the trial court that accepted the plea substantially complied with R.C. 2943.031(A).

*Id.* at paragraph two of the syllabus.

**{¶23}** The *Francis* court reasoned that "the R.C. 2943.031(A) notification is similar to the nonconstitutional notifications of Crim.R. 11(C)(2), such as the nature of the charges and the maximum penalty involved, and, therefore, implicates the same [substantial compliance] standard." *Id.* at ¶ 45. The high court defined "substantial compliance" as "that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. * * * The test is whether the plea would have otherwise been made." *Id.* at ¶ 48, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). The *Francis* court emphasized, however, that "[t]his specific determination" is merely one of many factors for the trial court to consider when ruling on a motion to withdraw a guilty plea pursuant to R.C. 2943.031. *Id.* at ¶ 48.

**{¶24}** In this case, Bravo had the services of a Spanish-language interpreter. Although the trial court did not recite the advisement verbatim, it nearly did so. A comparison of the statutory language and the trial court's advisement indicates no substantive difference that would

have prevented Bravo, under the totality of the circumstances, from understanding the implications of her plea relative to the immigration consequences. This Court concludes that the trial court substantially complied with mandates of R.C. 2943.031 in providing the required advisement.

{¶25} Moreover, the trial court inquired into the interpreter's qualifications, determining that she was from the International Institute and that she had experience in the criminal courts. The trial court further asked Bravo and her defense counsel whether they accepted that person as Bravo's interpreter for purposes of the criminal proceedings. Both defense counsel and Bravo asserted that they did. The trial court repeatedly inquired of Bravo whether she understood the court's colloquy, including the nature of the charges, possible penalties, her constitutional rights, as well as the R.C. 2943.031(A) advisement. When the interpreter needed the trial court to repeat certain facts like a date and the offense level of one of the charges, she asked the court to do so. Bravo never indicated that she did not understand the proceedings or any statement by the court. Accordingly, this Court cannot say that the trial court abused its discretion by denying Bravo's motion to withdraw her guilty plea based on her allegation that she did not understand the R.C. 2943.031(A) advisement.

{¶26} To the extent that Bravo argues deficiency of the statutory advisement based on trial counsel's ineffective assistance, we decline to address it beyond our discussion in the first assignment of error, as it is beyond the scope of this captioned assignment of error. *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 18.

{¶27} The second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE COURT ERRED IN DISMISSING THE APPELLANT'S MOTION FOR
POST CONVICTION RELIEF WITHOUT FIRST HOLDING AN

EVIDENTIARY HEARING DESPITE THE APPELLANT PROVIDING COMPELLING EVIDENCE THAT SHE WAS DENIED DUE PROCESS AND THE EFFECTIVE ASSISTANCE OF COUNSEL[.]

{¶28} Bravo asserts in her recitation of this assignment of error that the trial court erred by dismissing her motion for postconviction relief without a hearing. She argues in the substance of her brief, however, that the trial court erred by denying her post-sentencing motion to withdraw her guilty plea without first holding a hearing. This Court disagrees.

{¶29} Although Bravo refers to a petition for postconviction relief in her assignment of error, she is actually arguing about a motion to withdraw her plea. *See State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993 (recognizing a petition for postconviction relief and a motion to withdraw a plea as independent forms of relief). Accordingly, we constrain our discussion to the bases for relief sought in the trial court. Specifically, Bravo sought to withdraw her plea pursuant to R.C. 2943.031(D) and, to a much lesser extent, Crim.R. 32.1. She premised her motion on the trial court's failure to give the advisement required by R.C. 2943.031(A) and the manifest injustice that arose out of the ineffective assistance of defense counsel who failed to advise her regarding the immigration consequences of her plea.

{¶30} This Court reviews the trial court's judgment regarding a motion to withdraw a guilty plea, whether premised on R.C. 2943.031 or Crim.R. 32.1, for an abuse of discretion. *Francis*, 2004-Ohio-6894, at ¶ 33. Neither R.C. 2943.031(D) nor Crim.R. 32.1 by their terms require that the trial court hold a hearing prior to ruling on a motion to withdraw a guilty plea. In addition, Bravo concedes that this Court recognizes that "[a]n evidentiary hearing on a post-sentence motion to withdraw a guilty plea is not required if the 'record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to

demonstrate a manifest injustice.'" *State v. Razo*, 9th Dist. Lorain No. 05CA008639, 2005-Ohio-3793, ¶ 20, quoting *State v. Russ*, 8th Dist. Cuyahoga No. 81580, 2003-Ohio-1001, ¶ 12.

{¶31} In this case, Bravo appended evidentiary materials to her motion to withdraw her plea. Significantly, she appended the entire transcript from her change of plea hearing from which the trial court could determine whether or not the trial court judge had complied with the mandates of R.C. 2943.031(A)/(D). In addition, Bravo appended her 25-paragraph affidavit in which she averred that her attorney did not discuss the immigration consequences of pleading guilty with her.[1] She did not aver, however, that the trial court failed to provide the statutory advisement regarding such consequences.

{¶32} Based on a review of the record, this Court cannot say that the trial court abused its discretion by failing to hold an oral evidentiary hearing on Bravo's motion to withdraw her guilty plea. The court had before it a transcript of the plea hearing from which it could determine whether the trial court had provided the R.C. 2943.031(A) advisement. In addition, it had Bravo's affidavit in which she did not allege that the trial court had failed to provide the requisite advisement. Moreover, Bravo did not aver that the interpreter failed to interpret properly or that she did not understand what the interpreter said. Because the trial court had before it evidence from which it could determine the trial court's compliance with R.C. 2943.031(D) twelve years earlier it did not err by failing to hold an oral hearing on Bravo's motion pursuant to R.C. 2943.031. In addition, because defense counsel's ineffectiveness could not be premised on his failure to discuss the immigration consequences of a guilty plea with Bravo, as discussed in the first assignment of error, Bravo failed to submit evidentiary materials to demonstrate a manifest injustice required for Crim.R. 32.1 relief. Therefore, the trial court did

---

[1] Bravo further appended a full transcript of the sentencing hearing and all relevant journal entries relating to her conviction.

not err by failing to hold a hearing on Bravo's motion to withdraw her guilty plea. *See Razo* at ¶ 20. The third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE COURT ERRED IN FAILING TO SWEAR IN THE INTERPRETER, VERIFYING THE INTERPRETER'S CREDENTIALS, AND ESTABLISHING THAT THE INTERPRETER WAS FLUENT IN BOTH THE ENGLISH AND THE SPANISH LANGUAGES PRIOR TO USING THE INTERPRETER FOR INTERPRETATION DURING THE HEARING[.]

**{¶33}** Bravo argues that the trial court erred by failing to swear in the interpreter, verify the interpreter's credentials, and establish that the interpreter was competent to interpret during the change of plea hearing. Although this Court is troubled by the manner in which the trial court handled the interpreter issues, we may not address the merits of Bravo's arguments because they are barred by the doctrine of res judicata.[2]

**{¶34}** As an initial matter, we emphasize the importance of the trial court's actions to ensure that a defendant, whose lack of understanding and inability to communicate in English renders her incompetent, receives the meaningful services of an interpreter. The inability or limited ability to understand English implicates issues of a defendant's competence to stand trial or enter a plea. *See State v. Pina*, 49 Ohio App.2d 394, 400-401 (2d Dist.1975). Moreover, "[t]he failure to ensure that non-English speaking defendants are given the same opportunity as others to be present, to speak in their defense and to understand what is taking place, in whatever language they possess, reaches constitutional proportions." *Id.* at 401. The constitutional rights implicated include due process, equal protection, confrontation, and the effective assistance of counsel. *Columbus v. Lopez-Antonio*, 153 Ohio Misc.2d 4, 6-7, 2009-Ohio-4892, ¶ 3-4 (M.C.);

---

[2] Although these claims are barred by res judicata in this appeal from the denial of a motion to withdraw her plea, Bravo is not precluded from filing a motion for a delayed appeal as a direct appeal was never filed.

*see also Pina*, *supra*.  The legislature attempted to preserve a non-English speaking criminal defendant's constitutional rights through enactment of requirements for appointing qualified interpreters.  R.C. 2311.14.

**{¶35}**  At the time Bravo pleaded guilty in June 2004, the version of R.C. 2311.14 in effect stated in relevant part:

> (A)(1) Whenever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person. * * *

> (B) Before entering upon official duties, the interpreter shall take an oath that the interpreter will make a true interpretation of the proceedings to the party or witness, and that the interpreter will truly repeat the statements made by such party or witness to the court, to the best of the interpreter's ability.

> * * *

**{¶36}**  Although there was limited guidance for a court in determining whether an interpreter was "qualified," Evid.R. 604 directed application of rules relating to the qualification of experts as discussed in Evid.R. 702, as well as requiring the interpreter to swear an oath to interpret truly.  Prior to that time, the matter of an interpreter's qualification was historically left to the sound discretion of the trial court.  *Fennen v. State*, 14 Ohio C.D. 583, 583-584 (1903).

**{¶37}**  In addition, in 1975, the *Pina* court provided the following guidance to assist the trial court in an effort to ensure that a non-English speaking defendant's right to due process is maintained:

> If a witness does not understand English, an interpreter will be sworn to interpret the oath to him and his testimony to the court.  56 Ohio Jurisprudence 2d 516, Witnesses, Section 86; 172 A.L.R. 923.  An interpreter is considered and must be sworn as any other witness.  While the manner of eliciting the testimony of the witness through an interpreter is within the discretion of the trial court, the proper method is not to address the question to the interpreter but to the witness.  The question is then repeated by the interpreter without any remarks of his own, and the answers must be repeated literally by the interpreter in the first person.  The interpreter should give the answer, and the whole answer of the witness, adding nothing to it.  58 American Jurisprudence 309, Witnesses, Section 556.  The

interpreter as well as the witness is subject to cross-examination on the terms and expression used. 58 American Jurisprudence 365, Witnesses, Section 662. To the same effect is 98 Corpus Juris Secundum 27, Witnesses, Section 326. While considerable latitude exists as to the method of translation[,] and refusal of the court to obtain a full translation of the answers of the witness may not necessarily constitute a fatal error, when a plea of guilty is accepted in a criminal case it is our opinion that it is prejudicial error not to require a translation and record of what the defendant says or to accept the conclusion of the interpreter that the message of the court has been conveyed, the defendant understands and pleads guilty. Under the latter perfunctory method, there is no way by which the court can personally address the defendant and possibility that the court can find or be factually assured that the defendant understands and knowingly waives and pleads guilty. * * * Further, in a criminal case the defendant is entitled to hear the proceedings in a language he can understand. 15 Ohio Jurisprudence 2d 641, Criminal Law, Section 267; 15A Ohio Jurisprudence 2d 331, Criminal Practice and Procedure, Section 279. How this is accomplished is within the discretion of the trial judge; however, it must be accomplished.

*Pina*, 49 Ohio App.2d at 398-399.

{¶38} Since that time, the Supreme Court of Ohio has adopted Sup.R. 80-89 addressing interpreter issues. Sup.R. 88(A) requires a court to appoint a Supreme Court certified foreign language interpreter when such is necessary to allow a witness or party to participate in the proceedings in a meaningful way. Sup.R. 88(D) requires that any appointed interpreter be certified except under limited circumstances. Sup.R. 81-85 addresses the requirements and process for certification, while Sup.R. 84 expressly notes that interpreters shall be subject to the "Code of Professional Conduct for Court interpreters and Translators." The Code consists of 10 Canons which serve as directives for interpreters in their service to the court, as well as provide guidance to the court in rendering a determination in conjunction with Evid.R. 702 regarding the qualifications of any individual interpreter. The Canons require, inter alia, accuracy and completeness, impartiality, proficiency, and a complete representation of the interpreter's qualifications. In addition, the Supreme Court of Ohio has developed a handbook for courts to facilitate efforts to establish the qualifications of an interpreter. *Lopez-Antonio* at ¶ 13, citing

Chapter X ("Establishing Qualifications for Interpreters") of The Supreme Court of Ohio, Interpreters in the Judicial System: A Handbook for Ohio Judges (providing "model voir dire for establishing the qualifications of an interpreter").

{¶39} In this case, the trial court did not appoint Bravo's interpreter. Instead, defense counsel procured the interpreter's services. The trial court did not administer an oath to the interpreter; nor did the trial court engage in much colloquy with the interpreter to assess her qualifications. Although the trial court asked the interpreter where she worked and indicated that he was familiar with that agency, the court made no inquiry into the interpreter's proficiency in Spanish, and particularly any Spanish dialect spoken in the area of Ecuador in which Bravo had lived. In fact, the trial court speculated, in the absence of any evidence, that Bravo likely did not require the services of an interpreter given that she had lived in the United States for six years and was self-employed.[3] Such treatment of the interpreter issue would not remotely comport with the requirements of due process under the current legal precedent and Supreme Court guidance. Indeed, the trial court's failures would likely not pass muster under the limited legal guidance as it existed at the time of Bravo's change of plea hearing. Nevertheless, as troubling as the trial court's disregard of Bravo's due process rights is, this Court is precluded from addressing her substantive arguments in this regard because they could have and should have been raised on direct appeal.

---

[3] It appeared from the record that Bravo worked as domestic help for a private individual.

{¶40} The doctrine of res judicata precludes a party from relitigating any issue that was, or should have been, litigated in a prior action between the parties. *State v. Zhao*, 9th Dist. Lorain No. 03CA008386, 2004-Ohio-3245, ¶ 7, citing *State v. Meek*, 9th Dist. Lorain No. 03CA008315, 2004-Ohio-1981. The doctrine of res judicata is applicable regarding challenges to the use of interpreters. *See State v. Ibrahim*, 10th Dist. Franklin No. 14AP-355, 2014-Ohio-5307, ¶ 12. Here, as in *Ibrahim*, Bravo alleges errors relating to the qualifications, certification, and swearing in of the interpreter. As these issues could have been raised and fully litigated on direct appeal, they are barred by the doctrine of res judicata. The fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE COURT FAILED TO GIVE THE DEFENDANT THE FULL WARNING REGARDING POST-RELEASE CONTROL. THE JUDGE SHOULD HAVE ADVISED THE DEFENDANT THAT SHE COULD HAVE RECEIVED "UPTO THREE-YEARS POST-RELEASE CONTROL" AT THE DISCRETION OF THE ADULT PAROLE BOARD AND FAILED TO DO SO[.] [sic]

{¶41} Bravo alludes to an error in the imposition of post-release control in further support of her argument that she was denied due process. This Court finds the argument misplaced.

{¶42} The issue of post-release control arises when the trial court sentences a criminal defendant to a term of imprisonment. *See* R.C. 2967.28; R.C. 2929.19(B)(2). The trial court sentenced Bravo to a period of community control, not to any term of imprisonment. Accordingly, the issue of post-release control is not implicated in this case. The fifth assignment of error is overruled.

III.

**{¶43}** Bravo's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

FARHAD SETHNA, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.